WHITE v. WADHAMS.

1. BILLS AND NOTES—CERTIFICATE OF DEPOSIT—CONDITIONAL PAY-
MENT—NEGOTIABILITY.

Although a certificate of deposit was issued by a bank sub-
ject to the rules of its savings department, it did not
thereby become conditional, affecting its negotiability, un-
der section 6044, 2 Comp. Laws 1915, it being the obliga-
tion of the bank and not merely of its savings department.

2. SAME—CERTAINTY OF PAYMENT.

Nor can it be said to be lacking in certainty, and therefore
nonnegotiable, because subject to the rules of the savings
department.

3. SAME—INTEREST—CERTAINTY OF AMOUNT.

A provision in a certificate of deposit for interest at 2 per
cent. if left for six months, and interest to cease at end
of year if not renewed does not render it uncertain, since
the amount due thereon can be readily ascertained at any
time.

4. SAME—PAYABLE AT CERTAIN TIME.

A requirement by the bank of 30 days' notice before a
certificate of deposit is payable does not thereby render
it payable at an uncertain time.

5. SAME—INTEREST—COMPLETE AND REGULAR.

It cannot be contended that a certificate of deposit is not
complete and regular upon its face although it carries
2 per cent. interest, when it appears that 3 per cent. is
usual and customary, since the parties could agree upon
any interest not contrary to law.

6. SAME—PRESENTMENT—REASONABLE TIME—STATUTE.

A certificate of deposit payable on demand or 30 days
thereafter, according to the rules of the bank, must be
presented within a reasonable time after its issue, under
section 6112, 2 Comp. Laws 1915.

7. SAME.

Holding for 11 months before presenting for payment a
certificate of deposit carrying interest if left for six
months, but to cease at end of a year, held, not an un-

reasonable length of time under sections 6041, 6112, 2 Comp. Laws 1915.

8. SAME—HOLDER IN DUE COURSE—NOTICE—GIFTS.

Where a bank paid full value for a certificate of deposit, notice that the indorsee received it as a gift would not make the bank any the less a *bona fide* holder in due course.

9. GIFTS—CERTIFICATE OF DEPOSIT—DELIVERY—OWNER.

One who acquires a certificate of deposit by a valid complete gift, with proper delivery, has a perfect title to it.

10. BILLS AND NOTES—HOLDER IN DUE COURSE—FULL FACE VALUE.

Where a bank, in accepting a certificate of deposit, issued to the indorsee its own certificate of deposit, becoming absolutely liable thereon on its *bona fide* sale to another bank, it cannot be contended that it was not a purchaser for full face value.

Appeal from Kent; Brown, J. Submitted October 10, 1918. (Docket No. 34.) Decided December 27, 1918.

Bill by Marl S. White against Frederick N. Wadhams and the Hastings City Bank for an accounting. The State Savings Bank of Ann Arbor intervened, claiming to be a *bona fide* holder of a negotiable instrument. From a decree for plaintiff, intervening defendant appeals. Reversed, and decree entered for intervener.

*Swarthout & Master,* for plaintiff.

*Arthur Brown* (*E. R. Sunderland,* of counsel), for appellant.

KUHN, J. Plaintiff filed his bill to secure an accounting of a farm partnership existing during the summer of 1916 between himself and the defendant Frederick N. Wadhams. The plaintiff prevailed, and the decree provides that the defendant Wadhams owes the plaintiff $492.24 and interest, and, in addition,

plaintiff was given an attorney fee of $75, payable out of the partnership funds. The findings and the decree both state that a certificate of deposit was issued to the order of the defendant Wadhams, December 18, 1916, by the defendant Hastings City Bank for $950 and that this fund was the sole avails of the partnership after the debts had been paid. On December 23, 1916, an injunction was issued and served on the Hastings City Bank and on the defendant Wadhams, inhibiting the latter from transferring the certificate or drawing the money and the bank from paying out the money. This injunction has been respected by the Hastings City Bank, but Wadhams transferred the certificate to his sister, Ida E. Wadhams, who, on December 3, 1917, presented it for payment at the State Savings Bank of Ann Arbor, then known as the State and German American Savings Bank, which bank cashed it, paying therefor its full face value, partly in credit on a liberty bond, partly in cash, and partly in a certificate of .deposit for $700, issued by the State Savings Bank, payable to the order of Clara E. Straith, the sister of Ida E. Wadhams. On December 15, 1917, while the hearing was in progress, the Ann Arbor bank filed its petition asking that it be allowed to intervene, on the ground that it was a good-faith purchaser of the $950 certificate, and an order was made permitting it to intervene, and it filed its answer. The $700 certificate issued by the State Savings Bank was presented on December 7, 1917, to the First National Bank of Ypsilanti, which bank paid it in currency and then mailed it to the Ann Arbor bank for credit to its account at the Ann Arbor bank. According to the testimony of the cashier of the Ann Arbor bank, the certificate was received by the Ann Arbor bank on the morning of December 8th and was credited up to the account of the Ypsilanti bank, and about an hour after this was done, Walz, the cashier,

was called up by the assistant cashier of the Peninsular State Bank of Detroit, which bank is the correspondent of the Ann Arbor bank, and through which bank the Ann Arbor bank had sought to clear the Hastings bank certificate, and was informed that the $950 certificate had been protested by the Hastings bank on December 5th. It appears that the Ypsilanti bank, however, did not check out the money, that is, the $700, until after Mr. Walz had received this information from the Detroit bank. The certificate of deposit in question reads as follows:

"HASTINGS CITY BANK
"HASTINGS, MICH., Dec. 18, 1916.

"F. N. Wadhams has deposited in this bank nine hundred fifty dollars, $950.00, payable to the order of self, upon the return of this certificate, properly endorsed, with interest at 2 per cent. per annum if left six months.

"Subject to the rules of the savings department.

"No interest for fractional part of one month.

"Interest to cease one year .from date, unless renewed.

"A. A. ANDERSON,
"Cashier,
"C."

It will be noticed that it was presented for payment at the Ann Arbor bank on December 3, 1917, more than 11½ months after its date. The decree provides that the Ann Arbor bank was not a good-faith purchaser and did not get the Hastings certificate in due course, not having taken it within a reasonably short time of its issue, and directs the Hastings bank to pay to the plaintiff the amount of the decree and costs. It further directs the bank to turn over the balance of the $950 certificate to the court, same to be subject to the further order of the court after the rights of the parties in interest shall have been determined. The intervening defendant, the State Savings Bank of Ann Arbor, appeals.

As stated by counsel for appellant in their brief, there are two questions presented on this appeal:

(1) Was the certificate of deposit for $950 a nego tiable instrument?

(2) Was the State Savings Bank a holder in due course?

1. The negotiable instruments law provides that an instrument is negotiable which conforms to the following requirements (2 Comp. Laws 1915, § 6042):

"*First.* It must be in writing and signed by the maker or drawer;

"*Second.* It must contain an unconditional promise or order to pay a certain sum of money;

"*Third.* It must be payable on demand or at a fixed or determinable future time;

"*Fourth.* It must be payable to order or to bearer; and

"*Fifth.* Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

The first requisite is present, and no question is raised in regard to it, and likewise the fourth and fifth requisites are not involved or questioned in this appeal. The second requirement, however, is questioned by the plaintiff, who claims that the certificate of deposit is conditional in three respects, viz., that it was payable out of a particular fund; that it is conditional, because subject to the rules of the savings department; and that the amount is uncertain, because of the provision as to interest.

With reference to the claim that the certificate of deposit was payable out of a particular fund and therefore conditional, it is argued that because the certificate of deposit is carried in the savings department of the bank and subject to its rules, it is merely a charge on a particular fund, and therefore conditional. We are not impressed that there is any merit to this

contention. While it is true that under our law the banks divide their business into savings and commercial departments, nevertheless the certificate of deposit was issued by the bank and thus became the obligation of the bank and not of its savings department. The negotiable instruments law provides (2 Comp. Laws 1915, § 6044) :

"An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with:

"*First.* An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount." * * *

The rule applicable to this situation is thus stated in 8 Corpus Juris, p. 123:

"The true test in every case is, Does the instrument carry the general personal credit of the drawer or the maker, or only the credit of a particular fund?"

In the situation here presented, we are clearly of the opinion that the certificate of deposit, as we have said, carried the credit of the Hastings City Bank, and not merely that of its savings department.

Regarding the claim that the certificate of deposit is nonnegotiable, as it lacks the certainty required of commercial paper because it appears on its face that it is "subject to the rules of the savings department," we think it is sufficient to say that the rules and regulations of the savings department are provided for by the banking law and act as a protection to the bank against sudden demands to be met out of its rather unliquid assets. In our opinion, this protection given by the banking law to the bank should not be construed to operate to put it out of the power of a savings bank to issue negotiable certificates from its savings department; in which department, under the banking practice, they are generally carried.

The certificate of deposit provides for interest at 2

per cent., if left for six months, and further provides that interest is to cease one year after date, unless renewed. We do not think there is anything uncertain about this, as it can readily and easily be ascertained, on examination of the certificate itself, the amount due thereon at any time. *Cate* v. *Patterson*, 25 Mich. 191.

Is the certificate payable at an uncertain time? The rule of the bank with reference to time of payment was as follows:

"Thirty days' notice must, in all cases, be given in writing to the cashier at his banking office, during banking hours, before a depositor will be entitled to withdraw his deposit or any part thereof." * * *

There does not seem to be anything uncertain about this rule. By virtue of its terms the certificate becomes due 30 days after notice in writing given to the cashier. The time is clearly therein fixed, which must inevitably happen, and therefore it complies with the rule laid down in *Wilson* v. *Campbell*, 110 Mich. 580 (35 L. R. A. 544), where it is said, as to the certainty of time required:

"I think it is sufficient if a time be fixed which must inevitably happen."

We are of the opinion that the certificate of deposit herein under consideration meets all the requirements of the statute and must therefore be said to be a negotiable instrument.

2. The negotiable instruments law provides (2 Comp. Laws 1915, § 6093) as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"*First.* That it is complete and regular upon its face;

"*Second.* That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"*Third.* That he took it in good faith and for value;
"*Fourth.* That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

It is urged that the certificate is not complete and regular upon its face, because it carries 2% interest, when it appeared usual and customary to pay 3%. We see no merit in this contention, as the parties thereto could agree upon any interest which is not contrary to law. In an adjudicated case, *Tripp* v. *Curtenius*, 36 Mich. 494 (24 Am. Rep. 610), the certificate carried no interest at all. In *Beardsley* v. *Webber*, 104 Mich. 88, the certificate carried 6% interest.

This court has held that a certificate of deposit is a promissory note payable on demand. *Cate* v. *Patterson, supra; Tripp* v. *Curtenius, supra; Birch* v. *Fisher,* 51 Mich. 36; *Beardsley* v. *Webber, supra.* This certificate was payable on demand, or 30 days thereafter, according to the rules of the bank. Section 73 of the negotiable instruments law (2 Comp. Laws 1915, § 6112) provides:

\* \* \* "Where it is payable on demand, presentment must be made within a reasonable time after its issue." \* \* \*

Counsel for the plaintiff strenuously urge that the certificate was not presented within a reasonable time, that is, holding it for eleven months should be construed by the court as an unreasonable length of time, as a matter of law, and many cases with reference to promissory notes involving this question are called to our attention. In determining what is a reasonable time, we can again refer to the negotiable instruments law, section 2 (2 Comp. Laws 1915, § 6041), where it is said:

\* \* \* "In determining what is a 'reasonable time' or an 'unreasonable time', regard is to be had

to the nature of the instrument, the usage of trade or business, if any, with respect to such instruments, and the facts of the particular case." * * *

We are of the opinion that a study of the instrument itself before us for consideration shows that a reasonable time within which it should be presented is one year after date, at which time the interest stops running. It provides that it shall carry 2% interest, if left six months, and that interest shall cease one year from date, so that if the payee is to enjoy the interest provision, he must let the certificate run not less than six months and not more than one year. The limitation of the interest period operates as a direct inducement to the holder of the certificate to present the certificate at the end of a year, as he is penalized if he does not present it at that time. The certificate was presented within the year, on December 5, 1917, or 13 days less than the year for which it was to run as an interest-bearing security. We do not think that it was the intention of the parties that the certificate of deposit was to be immediately presented for payment, and the rule which seems applicable is thus stated by Daniel on Negotiable Instruments (6th Ed.), § 610, quoting Byles on Bills:

"Sometimes the note is expressly made payable with interest, which clearly indicates the intention of the parties to be that though the holder may demand payment immediately, yet he is not bound to do so."

See *Kirkwood* v. *National Bank,* 40 Neb. 484 (58 N. W. 1016, 24 L. R. A. 444, 42 Am. St. Rep. 683); *Pierce* v. *National Bank,* 215 Mass. 18 (101 N. E. 1060, 46 L. R. A. [N. S.] 693); *Murray* v. *National Bank,* 234 Fed. 481 (148 C. C. A. 247). These cases are sufficient to show that the courts have generally recognized a different rule applicable to these certificates of deposit which provide for an interest rate from those that do not and thus are payable on de-

mand. It will be noticed, on an examination of the case of *Tripp* v. *Curtenius, supra,* upon which counsel for the plaintiff rely in their argument as to what was a reasonable time for presentation of the certificate, that there was no interest provided in the certificate there under discussion.

Did the State Savings Bank take this certificate in good faith and for value? It is urged that the Ann Arbor bank showed a disregard of plaintiff's right and it is accused of bad faith, but we are not impressed that there is much force to this argument. The Ann Arbor bank knew nothing about the plaintiff, who was not a party to the certificate and lived a considerable distance away. It dealt with Ida E. Wadhams as a stranger who had a certificate of deposit to sell. It believed that the certificate was genuine, which was true, and that the woman who indorsed it was the real indorsee and had a right to indorse it, which was true, and it had nothing to gain by taking the certificate, for it paid the full value for it. Some claim is made that the Ann Arbor bank knew from the statements made by Ida Wadhams at the time she negotiated the certificate, that she received it by gift. While a reading of the testimony upon this point does not satisfactorily show that she gave the officer of the bank information which would lead him to believe that it was a gift, and the statement relied upon might well be construed to mean that she simply received the certificate from her brother, not necessarily meaning that she received it as a gift, nevertheless, even if it should be construed to mean a gift, we are of the opinion that it would not make the bank any less a *bona fide* holder in due course. One who acquires a certificate by a valid complete gift, with proper delivery, has a perfect title to it.

There is also a contention made that the Ann Arbor bank did not pay full value for the certificate, because

it gave Miss Wadhams its own certificate of deposit for $700, instead of cash. This $700 certificate, however, was purchased by the Ypsilanti bank, and that bank thereupon became a *bona fide* holder for value and the Ann Arbor bank became absolutely liable to it upon the certificate, and it is not material that the Ann Arbor bank did not actually pay out money on the $700 certificate until after it knew of the dishonor of the $950 certificate of the Hastings bank, for it was clearly bound to pay it. Upon this record it appears that the Ann Arbor bank became legally bound to the Ypsilanti bank on the $700 certificate before it knew of any claim by plaintiff on the $950 certificate issued by the Hastings bank, and in our opinion it was therefore a purchaser of the certificate for its full face value. We are of the opinion that the learned circuit judge should have held that the certificate of deposit was a negotiable instrument and that the State Savings Bank of Ann Arbor was a holder thereof in due course. It follows, therefore, that the decree should have provided that the Hastings City Bank pay to the State Savings Bank the amount due thereon at the time it was presented to the Hastings bank for payment.

The decree will therefore be reversed and one here entered in accordance with this opinion, with costs in favor of the appealing intervening defendant against the plaintiff and appellee.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.