*In re* McKEYES' ESTATE.

1. Estates of Decedents—Private Bank—Insolvency—Claims Against Estates.

Where deceased was the sole proprietor of private bank which he operated, any and all claims established against the insolvent bank which were not paid in full remained, as to such unpaid balances, valid obligations enforceable against deceased individually, unless some valid defense was made to appear.

2. Same—Claims Against Estates—Evidence.

*Prima facie* case sufficient to establish each claim by creditor-depositors of private bank, owned and operated by deceased, as a valid claim against proprietor's estate was presented by filing records and files in receivership in probate matter and supplemental testimony of witness whose list of such claims by consent of counsel was received in evidence in lieu of his oral testimony as to the amount of each respective claim, and there was an absence of any testimony tending to establish an affirmative defense to any claim.

3. Banks and Banking—Effect of Moratorium Agreement by Depositors.

Agreement by depositors representing 92 per cent. of private bank's deposits whereby they mutually obligated themselves not to withdraw any deposits for five years was a mutually binding obligation upon them and the bank's proprietor although not signed by him or by the bank as such, where it is clear that he in his individual capacity and as proprietor of the bank took the benefit of the moratorium, obtained the discharge of the temporary receiver, reopened the bank and continued in business for nearly five years, and fixed the due date for payment of the deposits as five years after agreement was filed in the receivership proceedings.

4. LIMITATION OF ACTIONS—MORATORIUM AGREEMENT—DEPOSITORS IN PRIVATE BANK—DEATH OF PROPRIETOR.

Claims of depositors in private bank, who had signed a moratorium agreement, prevented running of statute of limitations against their claims until expiration of term thereof and where such expiration was less than 6 years and 30 days prior to death of proprietor, such claims were not barred at time of his death (3 Comp. Laws 1929, § 13976, as amended by Act No. 21, Pub. Acts 1937; § 13981).

5. BANKS AND BANKING—NATURE OF DEPOSITS.

A general deposit of money in a bank does not constitute a loan of the money to the bank, nor a bailment in the strict sense of the term.

6. SAME—DEMAND DEPOSIT—STATUTE OF LIMITATIONS.

The statute of limitations will not commence to run against an action on a demand bank deposit until demand for payment has been made, and such demand need not be made within the period of limitation when computed from the date of deposit (3 Comp. Laws 1929, § 13976, as amended by Act No. 21, Pub. Acts 1937).

7. LIMITATION OF ACTIONS—DEPOSITORS IN PRIVATE BANK—DEMAND.

Claims of depositors in private bank who had not signed five-year moratorium agreement nor made demand for payment of deposits were not barred by statute of limitations even if filing of depositors' claims in receivership of bank were to be construed as a demand for payment where such demand was less than 6 years and 30 days prior to death of proprietor (3 Comp. Laws 1929, § 13976, as amended by Act No. 21, Pub. Acts 1937; § 13981).

8. SAME—PLEADING AS DEFENSE.

The defense of the statute of limitations is an affirmative defense (Court Rule No. 23, § 3 [1945]).

9. TRIAL—BURDEN OF PROOF.

The burden of establishing an affirmative defense is upon the party asserting such defense, unless it otherwise appears from the proofs.

10. LIMITATION OF ACTIONS—ESTATES OF DECEDENTS—EVIDENCE.

Objector to allowance of claims against estate of proprietor of a private bank *held*, to have failed to establish that any of the claims by creditor-depositors allowed by the probate court were barred by the statute of limitations (3 Comp. Laws 1929, § 13976, as amended by Act No. 21, Pub. Acts 1937; § 13981).

11. Election of Remedies—Private Bank—Receiver—Claims Against Estates.

Filing claim with receiver of private bank for amount of demand deposit therewith and receipt of partial payment thereon was not an inconsistent remedy to right to recover unpaid balance from proprietor or from his estate upon his death.

12. Same—Inconsistent Remedies.

In order that a plaintiff be barred from pursuing a second remedy, the remedy previously elected must have been an inconsistent one.

13. Appeal and Error—Estates of Decedents—Claims Against Estates.

Review of record on appeal from allowance of claims against estate of deceased proprietor of private bank *held*, to disclose no reason for disturbing allowance of claims by certain individuals for obligations against bank.

14. Parties—Substitution—Receivers—Estates of Decedents.

Where creditor-depositors of insolvent private bank have passed away or become mentally incapacitated since receivership was closed, proper parties claimant can be substituted in proceeding against estate of deceased proprietor.

15. Estates of Decedents—Insolvent Private Banks—Exhaustion of Assets.

Claims of creditor-depositors of private bank were properly allowed as claims against the estate of the deceased proprietor where record conclusively shows that the assets of the bank were exhausted through payment of receivership expenses and payment of balance to creditors.

16. Appeal and Error—Questions Reviewable—Itemized Statement of Claims Against Estate of Decedent.

Claim that objector to allowance of claims of creditor-depositors of private bank against estate of proprietor thereof was prejudiced by refusal of probate court to order a more detailed itemized statement of respective claims *held*, without merit and not reviewable where demand for such a statement or for a further bill of particulars does not appear to have been made in the circuit court.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted June 6, 1946. (Docket No. 46, Calendar No. 43,347.) Decided September 11, 1946.

In the matter of the estate of Frank H. McKeyes, deceased. John and Cora Robinson and others filed claims against the estate. Maude C. Lamoreaux and Grace M. Brown objected thereto. Claims allowed. Objectors appealed to circuit court. Judgment for claimants. Objector Brown appeals. Affirmed.

*Carl W. Benton* and *Anderson, Anderson & Anderson,* for claimants.

*Robert C. Porter* and *Charles W. Gore,* for objector.

NORTH, J. In the estate of Frank H. McKeyes, deceased, numerous claims were allowed in the probate court of Van Buren county. On appeal to the circuit court certain of such claims were allowed, and Grace M. Brown, an heir-at-law of deceased, has appealed. In the main the defenses urged are (1) that the claims were not proven, (2) that they are barred by the statute of limitations, and (3) that by filing their respective claims in a receivership and receiving partial payment thereon claimants elected an inconsistent remedy and for that reason cannot recover in the instant proceedings.

The inception of the relevant factual background is accurately stated by the circuit judge as follows:

"Under the name and style of Juan McKeyes & Company, Juan McKeyes and his son Frank H. McKeyes, as copartners, conducted the business of a private bank for many years at Lawton, Michigan. Juan McKeyes died March 28, 1925, leaving as sole heirs-at-law his wife Maria E. McKeyes, a daughter Grace M. Brown, and the son Frank H. His estate was not probated. With the consent and acquiescence of his mother and sister, the surviving partner continued to operate the banking business under the same name and style.

"May 9, 1932, Frank H. McKeyes filed petition for receivership and liquidation of the bank. Maria E. McKeyes and Grace M. Brown also requested appointment of receiver. A temporary receiver was appointed. However, the depositors had implicit faith in Mr. McKeyes. Within three weeks 262 depositors, representing 92 per cent. in value of deposits signed an agreement reading as follows:

" 'We, the undersigned depositors of Juan McKeyes & Company bank at Lawton, Michigan, for and in consideration of the mutual benefits of the bank and ourselves, hereby agree as follows:

" 'We agree that we will not, for a period of five years withdraw any of the sums which may be credited to our several accounts at this time in said bank, unless in the opinion of the bank a shorter time can be fixed, but will do all that is reasonable and proper to assist the bank to regain its financial standing, it being understood that deposits made by us on checking accounts from and after this date, shall be subject to check against but that our withdrawals from this fund shall be as reasonable as possible. It being the purpose of this agreement to make it possible and enable the bank to cope with the present unsettled financial condition and to prevent a loss on the part of the depositors.'

"May 29, 1932, Frank H. McKeyes filed a petition for discharge of temporary receiver, setting forth that:

" 'Since the appointment of said receiver, a very large percentage of the depositors of the said Juan McKeyes & Company, bankers, have solicited these petitioners that the bank reopen, and that it might continue in business, and your petitioners have made efforts to enable them to reopen said bank, and to ask for the discharge of receivership and dismissal of this case. * * * To this end, depositors of said bank, on their own volition have circulated and signed agreements in words and figures as follows:'

This was followed by a copy of the agreement above set out.

"The widow and daughter filed consent in writing to dismissal. The bank was reopened because 92 per cent. of the depositors so requested."

On the above petition of Frank H. McKeyes the temporary receiver was discharged, the proceedings dismissed, and the bank resumed business. The bank continued in business until April 23, 1937 (a week or two prior to the expiration of the depositors' five-year agreement not to withdraw deposits), when Frank H. McKeyes instituted a second proceedings for receivership. Prior thereto Frank H. McKeyes had become the sole proprietor of this private bank. On this appeal the following appears in a stipulation of facts:

"All of the claims filed and allowed in this record appear in this statement of liabilities (filed in the 1937 receivership). Under date of August 24, 1938, the receiver filed what appeared in this record as exhibit B.    *    *    *    Exhibit B sets forth an itemized statement of the claims of every depositor, whether his name be for checking account or on certificate of deposit or savings account. This list likewise includes each and every claim filed in the estate of Frank McKeyes, deceased, and allowed by the circuit court on this appeal.    *    *    *    All the certificates of deposit, savings books, or other evidence of these different claims were made a part of the receivership file and offered in evidence on the trial of this case. The final account of the receiver showed that he paid 3.35 per cent. to each of the creditors whose claim was allowed at the receivership proceeding."

The first objection urged by appellant is that the creditors' claims against the estate were not proven. The claims allowed against the estate of the deceased

were claims presented in the 1937 receivership, with the deduction of the 3.35 per cent. payments made in the receivership. At the outset it must be noted that since Frank H. McKeyes was the sole proprietor of the private bank which he operated, any and all claims established against the insolvent bank and which were not paid in full remained as to such unpaid balances valid obligations enforceable against Frank H. McKeyes individually, unless some valid defense was made to appear. This circumstance resulted in there being filed in the 1937 receivership not only the schedule of the assets and liabilities of the bank, but also a schedule of the personal assets and liabilities of Frank H. McKeyes, which was signed by him.

(1) *Proof of claims.* As to whether competent proof of these claims against the estate was made, the record discloses the following. All of the records and files in the receivership proceedings were offered and received in evidence; and as noted above, this offer included "All the certificates of deposit, savings books, or other evidence of these different claims." In addition to the above Carl W. Benton as a witness in behalf of the claimants testified as follows:

"*Q.* Now in the probate court, probate file of the Frank McKeyes, deceased, is each one of these claims separately filed and set forth?

"*A.* They are separately filed in the probate matter in the estate of Frank H. McKeyes, deceased."

In connection with the above the witness testified he had made an accurate list showing the amount due each of the claimants as filed in the probate court. Thereupon the list so prepared was produced and by consent of counsel received in evidence in lieu

of the witness testifying orally as to the amount of each of the respective claims. In the absence of any testimony tending to establish an affirmative defense to any of these claims, we are of the opinion that the testimony offered made a *prima facie* case and was sufficient to establish each of these claims as a valid obligation of the estate of Frank H. Mc-Keyes, deceased.

We reach the above conclusion notwithstanding all of the testimony was taken subject to appellant's objection that the individual claimants did not appear at the hearing and submit to cross-examination, "that the estate has raised in this case specifically the statute of limitations," that the offered testimony did not disclose the due date of the respective claims, and that by their having participated in the 1937 receivership proceedings the creditors had elected an inconsistent remedy and their claims in law were fully satisfied. Our determination is not based on the assumption that the allowance of these claims in the 1937 receivership proceedings was in legal effect a judgment as to each of such claims; but rather because of the fact that the bank books, certificates of deposit, et cetera, of the respective claims, which were part of the records and files in the receivership proceedings, were received in evidence in the instant case, together with the supplemental testimony of the witness Benton.

(2) *Statute of limitations.* Appellant's contention that these claims were barred by the statute of limitations is not tenable. In appellant's brief it is stated:

"All of the claims, except Marshall, Hawkins, Stoker and Boyer (which were allowed independent of the receivership), are evidenced by these certificates of deposit, savings books and other documents. All are dated prior or at 1932."

The 1932 date refers to the first receivership for which Frank H. McKeyes petitioned May 9, 1932. That proceeding was obviously terminated upon the discharge of the temporary receiver, May 29, 1932. It was during the period between these two dates that the bank depositors representing 92 per cent. of the bank's deposits entered into the moratorium agreement by which they mutually obligated themselves not to "withdraw any of the sums which may be credited to our several accounts" for a period of five years. The exact date when this mutually binding obligation not to withdraw their deposits was consummated or became effective does not appear in the record. But in appellant's brief it is stated concerning the first receivership: "No permanent receiver was ever appointed because a few weeks after the appointment of a temporary receiver (May 9, 1932, or later), 303 depositors * * * executed an agreement * * * whereby said depositors undertook not to withdraw any of their old deposits from the bank" for five years. The agreement was filed in the receivership proceedings in the circuit court May 28, 1932. We are not in accord with appellant's contention that neither Frank H. McKeyes nor his private bank are in any way bound by the terms of the depositors' five-year agreement, which for convenience we refer to as a moratorium. Appellant notes that the agreement was not signed by McKeyes or by the bank as such. Nonetheless it is too clear for argument that McKeyes in his individual capacity and as proprietor of his private bank took the benefit of the five-year moratorium agreement, and on the strength of it obtained the discharge of the temporary receiver, reopened this private bank, and continued in business for a period of nearly five years. The validity of the moratorium agreement is not successfully

challenge'd in the instant proceedings, nor do we think it could be. It was a mutual undertaking among the depositors who signed it and became binding upon McKeyes and his private bank by their acceptance of the benefit of the agreement, and neither McKeyes nor the bank can now be heard to say they were not a party to it. Clearly the legal effect of the moratorium agreement as between the depositors on the one hand and McKeyes or his bank on the other hand was to fix the due date for payment of their moneys in the bank in 1932 as at least five years after the agreement was consummated or approximately May 28, 1937. The statute of limitations did not begin to run against any of these claims prior to that date.

Frank H. McKeyes died May 21, 1943. Thus it appears from the record that the right of these creditors to file claims against the estate of Frank H. McKeyes, deceased, was not barred at the time of his death.

"If any person entitled to bring any of the actions before mentioned in this ·chapter, or liable to any such actions, shall die before the expiration of the time [six years] * herein limited, or within thirty days after the expiration of the said time, and if the cause of action does by law survive, the action may be commenced by or against the executor or administrator of the deceased person or the claim may be proved as a debt against the estate of the deceased person, as the case may be, at any time within two years after granting letters testamentary or of administration." 3 Comp. Laws 1929, § 13981 (Stat. Ann. § 27.610).

None of the claims of the depositors who signed the moratorium agreement were barred by the stat-

* See 3 Comp. Laws 1929, § 13976, as amended by Act No. 21, Pub. Acts 1937.—REPORTER.

ute of limitations at the time they were submitted for allowance in the estate of Frank H. McKeyes, deceased.

The record discloses that the claims of certain depositors who did not sign the five-year moratorium agreement were allowed, and the question is presented as to whether their claims are barred by the statute of limitations. This presents a phase of the law which is somewhat novel in this jurisdiction—*i.e.,* When does the statute of limitations begin to run as against the rights of depositors to recover bank deposits?

While there is some conflict in the authorities bearing upon the above question, we are satisfied that the rule of law which should be accepted, and which is supported by the great weight of authority, is accurately and succinctly stated in *Elliott* v. *Capital City State Bank,* 128 Iowa, 275 (103 N. W. 777, 1 L. R. A. [N. S.] 1130, 111 Am. St. Rep. 198). The cited L. R. A. embodies an abstract of the briefs of respective counsel citing numerous cases and also an informative note, and for that reason we forego citation and review of the numerous authorities. The headnote of the Iowa supreme court case reads:

"A deposit in a bank does not constitute a loan of the money to the bank; and the statute of limitations will not commence to run against an action on a certificate of deposit until demand for payment has been made, and such demand need not be made within the period of limitation when computed from the date of the deposit."

Obviously the same rule of law should apply to ordinary commercial and savings bank deposits as applies to the usual form of certificates of deposit. In the body of its opinion the Iowa supreme court says "we distinctly held that an ordinary deposit

is not a loan to the bank.'' And further, the Iowa court said:

"Deposits are made in a bank in accordance with the universal commercial usage, which becomes a part of the law of the transaction. They are neither loans, nor bailments in the strict sense of the term. A deposit is a transaction peculiar to the banking business, and one that the courts should recognize and deal with according to commercial usage and understanding. * * * The transaction is in reality for the benefit and convenience of the depositor, and, while the relation of debtor and creditor exists, and the bank has the use of the money for commercial gain, it assumes no further obligation than to pay the amount received when it shall be demanded at its banking house. *Girard Bank* v. *Bank of Penn Township,* 39 Pa. 92 (80 Am. Dec. 507). * * * If no actual demand be necessary to mature the debt created by a deposit, then depositors may sue at once upon leaving the bank, and a transaction intended to be for the mutual benefit of both may become one of oppression and wrong to the bank, and this the law should not tolerate. That a certificate of deposit is distinguishable from a demand promissory note, we think clear. * * * (Citing numerous authorities.) And that it is not due and payable until actual demand is made, we think is held by the overwhelming weight of authority. (Citing many authorities.)''

The record before us is barren of any testimony disclosing that any of the claimants in the instant case at any time made a demand for the payment of their deposits, and hence the conclusion follows that the statute of limitations did not begin to run against their respective demands. Even if the filing of depositors' claims in the 1937 receivership were to be construed as a demand for payment, still such demand was within 6 years and 30 days prior to the

death of Frank H. McKeyes. There is no merit to appellant's contention that the claims allowed or any of them were barred by the statute of limitations.

Further, in connection with the phase of this appeal now under consideration it may be noted that the defense of the statute of limitations is an affirmative defense (Court Rule No. 23, § 3 [1945]), and that appellant failed to establish that any of the claims allowed were barred by the statute of limitations at the time they were filed in the McKeyes estate. The burden of establishing an affirmative defense is upon the party asserting such defense, unless it otherwise appears from the proofs. *Burke v. City of River Rouge,* 240 Mich. 12.

(3) *Election of remedy.* Contrary to appellant's claim, there was no inconsistency on the part of these claimants in having submitted their claims in the 1937 receivership proceedings, wherein they received a partial payment of 3.35 per cent. and in later asserting a right to recover the unpaid balance as claims against the McKeyes estate. Subsequent to the 1937 receivership and during the lifetime of McKeyes, any or all of these claimants might have brought suit against McKeyes and in the absence of some legal defense recovered the unpaid balance of their respective claims, and likewise there was a right of recovery against his estate. See *James S. Holden Co.* v. *Applebaum,* 263 Mich. 507. In support of her contention appellant erroneously cites and relies upon cases of the type of *H. G. Vogel Co.* v. *Original Cabinet Corp.,* 252 Mich. 129. Cases of this type are not in point because decisions therein turned upon a determination that resort was sought to be had in a second remedy which was inconsistent with a remedy formerly pursued. These claimants have not previously resorted to an inconsistent rem-

edy and therefore their right to prosecute claims is not barred on the theory of having previously elected an inconsistent remedy.

Some comment is made in appellant's brief as to the allowance of the Boyer, Marshall, Hawkins and Stoker claims, but our review of the record, in the light of the law as hereinbefore determined, discloses no reason for holding that the trial court was in error in the allowance of these claims as adjudged. The stipulation of facts contains the following:

"Every claim presented on this record (except the claim of Idale Marshall, Nathan Hawkins, F. R. or Alice Stoker, and the claim of $2,800 of Agnes Boyer) were allowed as claims to be paid by the receiver. On a later hearing the claim of Idale Marshall was allowed at the sum of $1,016. The claim of Nathan Hawkins was allowed at the sum of $100. The claim of F. R. or Alice Stoker was allowed at the sum of $600. The $2,800 claim of Agnes Boyer was filed separately and proved by the production of certificate of deposit itself and allowed as a claim against the receiver."

In the final determination in the circuit court each of the above claims was allowed, although the claims of Hawkins and Stoker were somewhat reduced in amount. Evidently each of these claims was a bank obligation. The record discloses no valid reason for disturbing the allowance of these respective claims. Appellant asserts that some of the claims were allowed in the name of parties now deceased or mentally incapacitated; but in disposing of the case the trial judge properly provided "If creditor-depositors have passed away since receivership was closed suggestion of death can be made and proper parties claimant substituted." The remand of this case is with the right of circuit court to make such modi-

fication of the record in event of there being occasion for so doing.

As another ground for asserting that these claimants should not be allowed to recover, in appellant's brief it is stated: "In order to constitute debts of the decedent, the cases hold that there must first be evidence of the exhaustion of all assets of the bank. \* \* \* There is no showing by the alleged creditors here that the bank assets have been exhausted." The above contention is not justified by the record. Instead the stipulated facts disclose that total net assets of the insolvent bank were $26,074.32 out of which the expenses of the receivership were paid and the balance was paid to the creditors, constituting a partial payment of 3.35 per cent. of the proven claims. Conclusively the assets of the bank were exhausted.

There is no merit to appellant's claim that she was prejudiced in this proceedings by the refusal of the probate court to order a more detailed itemized statement of the respective claims. In any event a demand for such a statement or for a further bill of particulars does not appear to have been made in the circuit court and therefore is not reviewable on this appeal.

The judgment in the circuit court allowing the claims against the estate of Frank H. McKeyes, deceased, is affirmed; and the case remanded to the circuit court for such further proceedings, if any, as may be deemed requisite therein, and for certification of the circuit court's final determination to the probate court for further proceedings in said estate. Costs to appellees.

Butzel, C. J., and Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred. Starr, J., took no part in the decision of this case.