TRADER v COMERICA BANK

Docket No. 296129. Submitted April 12, 2011, at Grand Rapids. Decided
June 30, 2011, at 9:00 a.m. Leave to appeal denied, 491 Mich 897.

Vella Trader brought an action in the Kalamazoo Circuit Court as
personal representative of the estate of Thelma DeGoede against
Comerica Bank, alleging breach of contract after defendant re-
fused to honor three certificates of deposit (CDs) that were found
in a safety deposit box that had belonged to DeGoede. The CDs
were purchased in the early 1980s and had initial six-month
maturity dates. After a bench trial, the court, Gary C. Giguere, J.,
issued an opinion and order, finding no cause of action because the
statute of limitations contained in MCL 600.5807(8) barred plain-
tiff's action. Plaintiff appealed.

The Court of Appeals *held*:

The CDs at issue all contained conspicuous statements indicat-
ing that they were nonnegotiable. Accordingly, the trial court
properly concluded that the CDs were not governed by article 3 of
the Uniform Commercial Code, but instead were governed by
contract law. Thus, the applicable period of limitations was six
years from the date the claim accrued as set forth in MCL
600.5807(8). The CDs at issue were of a type that was subject to
automatic renewal and two of the CDs contained language indi-
cating that the parties intended multiple renewal periods. CDs are
not due and payable until a demand for payment is made, which is
when the period of limitations begins to run on an action for
payment on a CD. Demand for payment in this case occurred in
2005 and the case was brought in 2008, within the period of
limitations. The trial court erred when it concluded that plaintiff's
action was time-barred.

Reversed and remanded for a new trial.

LIMITATION OF ACTIONS — BANKS AND BANKING — NONNEGOTIABLE CERTIFICATES
OF DEPOSIT — STATUTE OF LIMITATIONS — CONTRACT LAW — ACCRUAL —
DEMAND FOR PAYMENT.

Nonnegotiable certificates of deposit are governed by contract law
rather than the Uniform Commercial Code; the applicable period
of limitations for a nonnegotiable certificate of deposit is six years

from the date the claim accrued; the period of limitations begins to run on an action for payment on a nonnegotiable certificate of deposit when a demand for payment is made (MCL 440.3104[4]; MCL 600.5807[8]).

*Ford, Kriekard, Soltis & Wise, P.C.* (by *Robert A. Soltis*), for plaintiff.

*Simon, Galasso & Frantz, PLC* (by *Henry Stancato*), for defendant.

Before: SHAPIRO, P.J., and FITZGERALD and BORRELLO, JJ.

PER CURIAM. Plaintiff Vella Trader,[1] the personal representative of the estate of Thelma L. DeGoede, brought this suit, alleging breach of contract against defendant, Comerica Bank, formerly known as Industrial State Bank & Trust Company,[2] for its failure to honor three certificates of deposit (CDs). After a bench trial, the trial court issued an opinion and order finding no cause of action because the statute of limitations contained in MCL 600.5807(8) barred plaintiff's claim. Plaintiff appeals as of right. We reverse and remand.

On December 22, 1980, Industrial State Bank & Trust issued a CD payable to Thelma in the amount of $10,000. The CD had a maturity date of June 22, 1981, and a stated interest rate of 15.673 percent, payable at maturity. The CD indicates that it is "Non-Transferable" and is "TYPE 20." The front of the CD contains the following language:

> At maturity and upon presentation of this Certificate properly endorsed payment of this deposit will be made by

---

[1] Plaintiff is the daughter of Thelma L. DeGoede.

[2] Industrial State Bank & Trust Company was acquired by Comerica Bank in November 1992.

Industrial State Bank & Trust Company. . . . Upon written notice, the Bank reserves the right to redeem this Certificate on the original or any subsequent maturity date and further reserves the right to change the interest rate payable for any renewal period. This Certificate is designated by type above with special provisions by type as set forth on the reverse of this Certificate.

The back of the certificate contains three boxes. The first box is titled, "CERTIFICATE DESCRIPTION BY TYPE" and lists four different types of certificates. A "Type 20" certificate is described as follows: "MONEY MARKET CERTIFICATE: The Certificate will be **automatically renewed** for a like period unless presented for payment. Renewal rates are based on the Treasury Bill Rates as defined by the Federal Deposit Insurance Corporation in effect the week of renewal. This Certificate is non-negotiable." The second box is titled "FINAL PAYMENT INFORMATION" and has blanks for payment information that have not been filled in. The third box is titled "Show Payment method" and also has blanks that have not been filled in. Underneath the last box are the words "Customer endorsement," and no endorsement has been made.

On June 26, 1981, Industrial State Bank & Trust issued a CD payable to Thelma in the amount of $10,000. The CD had a maturity date of December 25, 1981, and a stated interest rate of 14.189 percent, payable at maturity. The remaining terms and conditions on the front and back of the certificate are identical to those contained on the CD issued on December 22, 1980, with one exception: the front of the CD does not state that it is nontransferable. There are no signatures or notations on the back of the certificate indicating final payment.

On July 13, 1982, Industrial State Bank & Trust issued a CD payable to Thelma in the amount of

$10,000. The CD had a maturity date of January 11, 1983, and a stated interest rate of 13.098 percent, payable at maturity. The terms and conditions on the front of the certificate are identical to those of the first two, with two exceptions: First, along with the term "NON-TRANSFERABLE" on the front, the CD also states that it is "Non-Negotiable." Second, instead of stating that the reverse side of the certificate states provisions regarding the types of certificates, the certificate states, "This Certificate is designated by type and the description and provisions thereof are set forth on separate literature." Accordingly, the back of the certificate is somewhat different from the other two. The first box is titled "CERTIFICATE TYPE KEY" but does not contain language describing the certificate types; it does not contain language discussing the renewability of type 20 money market certificates. As with the other two CDs, the back of this certificate also contains the boxes for final payment information and payment method and also an area for customer endorsement. Similarly, there are no signatures or notations on the back indicating that final payment was made.

Thelma died on May 6, 2005. At that time, both plaintiff and Thelma's son, John DeGoede, were aware that that Thelma had a safety deposit box and that the box contained CDs. According to plaintiff, Thelma told her in 2004 that the safety deposit box contained three CDs, one for each of Thelma's three children with John DeGoede. Thelma told plaintiff at that time that she had recently attempted to present the CDs for payment but that defendant had refused to pay. Between 45 and 60 days after Thelma's death, John retrieved the CDs from Thelma's safety deposit box.

John presented the CDs to Comerica Bank for payment. Comerica Bank denied the request to redeem the

CDs because the bank had no record of the CDs. Plaintiff filed the present suit to recover the value of the CDs, including interest accumulated from the date of their issue.

Following a bench trial,[3] the court issued an opinion and order finding no cause of action and entered judgment for defendant. The court interpreted the language of the 1980 and 1981 CDs to mean that the deposit period of the two CDs would be six months and that the CDs would be automatically renewed for only one additional six-month period if the CDs were not presented for payment once they matured. With regard to the 1982 CD, the court determined that it contained no renewal language and, therefore, the court declined to read such language into the certificate. As a result, the court determined that the CDs reached their maturity dates, at the latest, by December 22, 1981, in the case of the 1980 CD, by June 25, 1982, in the case of the 1981 CD, and January 11, 1983, in the case of the 1982 CD. Thus, the court concluded that plaintiff's suit was barred as of January 11, 1989, by the six-year period of limitations in MCL 600.5807(8) for breach of contract actions.

The sole issue for our consideration is whether the trial court erred by finding that the suit is time-barred. Plaintiff argues that the cause of action did not accrue until John presented the CDs to the bank in demand for payment in 2005 and, therefore, that the complaint filed in 2008 was timely. The bank contends that the trial court correctly concluded that the period of limi-

---

[3] Evidence was presented at trial regarding the bank's recordkeeping practices and the lack of any 1099 interest reporting records for Thelma from 1985 through 2003. This evidence is not relevant to the issue presented on appeal and, therefore, the evidence is not discussed in this opinion.

tations began to run at the end of the six-month renewal period for the 1980 and 1981 CDs and on the maturity date of the 1982 CD. It asserts that the contention that a nonnegotiable CD containing a specific maturity date never accrues unless and until the descendants of the original depositor make a formal demand for payment does not accurately reflect Michigan law.

This Court reviews a trial court's findings of fact following a bench trial for clear error and reviews de novo the trial court's conclusions of law. *Heeringa v Petroelje*, 279 Mich App 444, 448; 760 NW2d 538 (2008). This Court also reviews de novo issues of contractual interpretation. *Manuel v Gill*, 481 Mich 637, 643; 753 NW2d 48 (2008).

The Uniform Commercial Code (UCC) defines a certificate of deposit as "an instrument containing an acknowledgement by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money." MCL 440.3104(10). However, a written promise to pay money is not a negotiable instrument if at the time it is issued "it contains a conspicuous statement . . . to the effect that the promise . . . is not negotiable . . . ." MCL 440.3104(4). The CDs in this case all contain conspicuous statements indicating that they are nonnegotiable. Thus, the trial court properly concluded that the CDs are, by their terms, nonnegotiable and not governed by article 3 of the UCC. Rather a nonnegotiable CD is a contract, see *Cohn-Goodman Co v People's Savings Bank of Grand Haven*, 203 Mich 307, 313; 168 NW 1042 (1918), and is governed by contract law.

When interpreting a contract, this Court's primary task is to determine the intent of the contracting parties. *AFSCME v Bank One, NA*, 267 Mich App 281,

283; 705 NW2d 355 (2005). If a contract's language is not ambiguous, this Court will construe the contract and enforce its terms as written. *Id.* A contract will be construed as a whole. *Associated Truck Lines, Inc v Baer*, 346 Mich 106, 110; 77 NW2d 384 (1956). This Court will "give effect to every word, phrase, and clause in a contract . . . ." *AFSCME*, 267 Mich App at 284 (quotation marks and citation omitted). "Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument." *Baer*, 346 Mich at 110 (quotation marks and citation omitted).

The 1980 and 1981 CDs clearly state the following on the back of the certificates: "The Certificate will be **automatically renewed** for a like period unless presented for payment." This language does not limit the number of successive periods of renewal. As a result of this provision, it cannot be said that the 1980 and 1981 CDs had a definite date of maturity. Indeed, a reading of each certificate as a whole indicates that the CDs are automatically renewable for multiple periods until they are redeemed by either Thelma or defendant. The back of the certificates state that "[r]enewal rates are based on the Treasury Bill Rates as defined by the Federal Deposit Insurance Corporation in effect the week of renewal." The certificates' use of the term "rates" as opposed to a single renewal rate indicates that the parties intended multiple renewal periods. Moreover, the front of the certificates provides the following language: "Upon written notice, the Bank reserves the right to redeem this Certificate on the original or any subsequent maturity date and further reserves the right to change the interest rate payable for any renewal period." The certificates' use of the terms "any

subsequent maturity date" and "any renewal period" as opposed to referring to a singular maturity date or singular renewal period also indicates that the parties intended multiple renewal periods.

With regard to the 1982 CD, the trial court concluded that it was not automatically renewable because the certificate does not contain any language regarding automatic renewal. However, the CD states that a description and the provisions of a type 20 certificate of deposit are "set forth on separate literature." As noted earlier in this opinion, a type 20 certificate of deposit automatically renews for a like period unless presented for payment.

The Michigan Supreme Court has traditionally held that a certificate of deposit is, in effect, a promissory note payable on demand. See, e.g., *Union Guardian Trust Co v Emery*, 292 Mich 394, 402-403; 290 NW 841 (1940); *White v Wadhams*, 204 Mich 381, 388; 170 NW 60 (1918). However, in *White*, the Court differentiated between certificates of deposit that expressly state that they are payable with interest and "those that do not and thus are payable on demand." *White*, 204 Mich at 389-390. The Court stated that when a certificate of deposit is expressly made payable with interest, the parties likely do not intend the certificate of deposit to be immediately presented for payment. *Id.* at 389. Rather, the inclusion of interest indicates that the parties intended that the holder of the certificate may demand payment immediately, but is not bound to do so. *Id.*

Later, in *In re McKeyes' Estate*, 315 Mich 369, 379; 24 NW2d 155 (1946), the Michigan Supreme Court considered the issue of when the period of limitations begins to run on an action against a certificate of deposit. The Court adopted the rule articulated by the Supreme

Court of Iowa in *Elliott v Capital City State Bank*, 128 Iowa 275; 103 NW 777 (1905), that the period of limitations does not begin to run until a demand for payment has been made. *McKeyes*, 315 Mich at 379.[4] The *McKeyes* Court approvingly quoted *Elliott*, which stated that a certificate of deposit is not due and payable until an actual demand for payment is made and that a certificate of deposit is neither a loan of money to a bank nor a bailment. *Id.* at 380. Rather, it is "a transaction peculiar to the banking business . . . ." *Id.* (quotation marks and citation omitted).

The applicable statute of limitations in this case is MCL 600.5807(8), which bars a cause of action for breach of contract brought six years after the claim accrued. As discussed earlier in this opinion, the trial

---

[4] Defendant argues that the Supreme Court's conclusion in *McKeyes* that the period of limitations begins to run on a claim against a certificate of deposit when a demand for payment is made is dictum. Dictum is not binding precedent under MCR 7.215(J)(1). *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 436-437; 751 NW2d 8 (2008). Our Supreme Court has defined "dictum" as "an incidental remark or opinion" or "a judicial opinion in a matter related but not essential to a case." *Id.* at 437 (quotation marks and citation omitted). In *McKeyes*, Frank H. McKeyes was the sole proprietor of a private bank. *McKeyes*, 315 Mich at 375. After McKeyes's death, the probate court allowed various claims against McKeyes's estate. *Id.* at 372, 379. These claims included claims against certificates of deposit. *Id.* at 374-375. In its defense, the estate argued, among other things, that the claims were barred by the statute of limitations. *Id.* at 372, 376-381. As the Supreme Court indicated, the estate's defense presented the Court with the novel issue of when the period of limitations begins to run against the rights of depositors to recover bank deposits. *Id.* at 379. The Court's consideration of the issue was not "an incidental remark" or an "opinion in a matter related but not essential to [the] case." *Allison*, 481 Mich at 437 (quotation marks and citation omitted). Rather, it was necessary to address the estate's statute of limitations defense. Thus, the Court's statement that the period of limitations does not begin to run on a claim against a certificate of deposit until a demand for payment has been made is a rule of law. See *id.* at 437-438.

court found Trader's testimony that Thelma presented the CDs to defendant for payment in 2004 not to be credible. Thus, the record indicates that a demand for payment for the three CDs was first made by John between 45 and 60 days after Thelma's death in 2005. The claim accrued on that date and the period of limitations began running. MCL 600.5827 (stating that a "claim accrues at the time provided in [MCL 600.5829] to [MCL 600.5838]," neither of which applies herein, or "*at the time the wrong upon which the claim is based was done*") (emphasis added); *Mich Millers Mut Ins Co v West Detroit Bldg Co, Inc*, 196 Mich App 367, 372 n 1; 494 NW2d 1 (1992) ("A breach of contract claim accrues on the date of the breach . . . ."). Plaintiff filed the complaint in this case on April 3, 2008. Therefore, plaintiff brought this action within the six-year period provided by the statute of limitations. The trial court erred when it concluded that MCL 600.5807(8) barred plaintiff's claim.

Aside from its statute of limitations defense, defendant presents a number of other defenses that it argues bar plaintiff's claim. However, we decline to address these issues as they have not been first decided by the trial court. Defendant is free to raise these defenses on remand.

Reversed and remanded for a new trial. Jurisdiction is not retained.

SHAPIRO, P.J., and FITZGERALD and BORRELLO, JJ., concurred.