*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

BABY BUFORD PORT HURON, LLC,

UNPUBLISHED
August 20, 2020

Plaintiff/Counterdefendant-Appellant,

v

No. 347445
St. Clair Circuit Court
LC No. 17-000110-CK

PORT HURON REALTY PARTNERS, LLC,

Defendant/Counterplaintiff-Appellee.

Before: REDFORD, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Plaintiff/counterdefendant (plaintiff) appeals as of right the trial court's judgment and order in favor of defendant/counterplaintiff (defendant). On appeal, plaintiff argues that the trial court erred because the lease between the parties imposed a duty on defendant to plow and maintain the area adjacent to the premises. We affirm.

## I.  FACTUAL BACKGROUND

This matter arises from a contract dispute between a landlord and a tenant. In 2015, plaintiff, as tenant, entered into a 10-year commercial lease with Robert Frohm—trustee of the Charles F. Barrett Fourth Amended and Restated Revocable Trust (the Trust)—for a stand-alone fast-food restaurant and plot of land, located at 2852 Pine Grove Avenue in Port Huron, Michigan. The plot of land where the restaurant is located is in a shopping plaza. In March 2016, defendant purchased the shopping plaza from the Trust, and assumed the Trust's position as landlord to the lease with plaintiff.

Section f of the lease defines "premises" as follows:

Premises mean[s] the building and land located at 2852 Pine Grove Avenue . . . and specifically identified on the attached Exhibit A BMJ 6-22-15 page 1 Sketch of Proposed Lease and as described as "Proposed Lease" on its page 2.

The Sketch—referred to as the "Sketch of Proposed Lease" in Section f of the lease—was developed during lease negotiations. The Sketch illustrates the entire leased property, and depicts

-1-

a quadrilateral-shaped area that is drawn with four solid-black lines and is described as "proposed lease" (proposed-lease area). The proposed-lease area encompasses the restaurant building, the drive-through area, parking spaces, and additional asphalt. To the left of the proposed-lease area is a triangle-shaped area that has solid-black lines on two sides and dotted lines on the other side. To the right of the proposed-lease area is a trapezoid-shaped area with two solid-black lines and two dotted lines.

With respect to repair and maintenance of the premises, the lease stated the following:

8. <u>Repairs and Liens</u>. [Plaintiff] must maintain the Premises in all respects in good repair to the reasonable satisfaction of [defendant], in a clean and safe condition, and in accordance with Applicable Laws. [Defendant] has no maintenance obligations regarding the Premises ([defendant] shall, however, maintain, repair, and plow snow on the drive area that is adjacent to the Premises and identified on Exhibit A by the yellow[-]dotted lines[1] and [defendant's] obligation to plow snow shall mean the obligation to remove snow in a reasonable manner within a reasonably commercial time following snow of two (2") or more having accumulated.)

During the time that the Trust was plaintiff's landlord, the Trust maintained and plowed snow in the area that surrounded the restaurant building. After defendant purchased the shopping plaza from the Trust, a dispute arose regarding each parties' responsibilities for maintaining and repairing the drive area adjacent to the restaurant building. Specifically, the parties disagreed over the responsibility to repair a hazardous condition[2] and plow snow from the drive-through area. Both the hazardous condition and the drive-through area were within the proposed-lease area. Each party believed that it was the other's responsibility to repair the hazard and plow the snow.

At the bench trial, Frohm testified that, when he negotiated the terms of the lease with plaintiff, the intent of the parties was that "premises" meant only the restaurant building itself, not the entire property. According to Frohm, the intent of the parties negotiating the lease was that the landlord would be responsible for plowing the area within the dotted lines (the areas on either side of the proposed-lease area) and the area between the dotted lines (the proposed-lease area). Frohm testified that the landlord was responsible for plowing the entire area adjacent to the restaurant building, which includes the drive-through area and the parking spaces that are outside of the restaurant.

Following the bench trial, the trial court ruled in favor of defendant. The trial court first concluded that the lease language was clear and unambiguous, and therefore, any extrinsic evidence could not be relied upon for the resolution of the dispute. The trial court determined that

---

[1] The parties refer to the area within the dotted lines as the area within "yellow-dotted lines," but, for the purposes of clarity, we will only refer to the area as with the "dotted lines."

[2] It is not entirely clear from the lower court record exactly what the hazardous condition was, or where it was located, although we have been able to infer that the hazardous condition was within the proposed-lease area.

the lease defined "premises" to include both the building and land associated with the fast-food restaurant's address, and that Paragraph 8 further explained that the landlord is responsible for the maintenance and snow removal on the property adjacent to the premises, which is denoted by the dotted lines in the Sketch. The trial court concluded that the area within the dotted lines is "clearly marked off in the Sketch, and must be plowed to allow ingress and egress to and from the [p]remises." Thus, defendant, as landlord, was only responsible for maintaining and plowing the property adjacent to the premises, which is the area within the dotted lines and does not include the proposed-lease area that is marked off by the solid-black lines in the Sketch. Plaintiff appeals the trial court's judgment.

## II. BREACH OF THE LEASE

Plaintiff argues that the trial court erred when it ruled in favor of defendant because the lease imposed a duty on defendant to maintain and plow the area that is adjacent to the premises, and that the lease defines premises as only the restaurant building. We disagree.

Following a bench trial, this Court reviews the trial court's factual findings for clear error and conclusions of law de novo. *Florence Cement Co v Vettraino*, 292 Mich App 461, 468; 807 NW2d 917 (2011). "A factual finding is clearly erroneous if there is no substantial evidence to sustain it or if, although there is some evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 172-173; 848 NW2d 95 (2014) (footnotes omitted). Issues involving the interpretation of contractual provisions are reviewed de novo. *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 529; 740 NW2d 503(2007).

When interpreting a contract, this Court's primary objective is to determine the intent of the contracting parties. *Trader v Comerica Bank*, 293 Mich App 210, 215; 809 NW2d 429 (2011). A contract must be read as a whole; each word, phrase, and clause must be given effect. *Id*. at 216 (citations omitted). If the contractual language is unambiguous, this Court must "construe the contract and enforce its terms as written." *Id*. A "contract is ambiguous when its provisions are capable of conflicting interpretations." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003) (citation and quotation marks omitted).

Plaintiff argues that Frohm's testimony demonstrates that the lease was ambiguous with respect to defendant's obligation to maintain and plow the area around the restaurant building. At trial, Frohm testified that, when he negotiated the terms of the lease with plaintiff, he intended for "premises" to mean the restaurant building itself, and therefore, the landlord would be responsible for maintaining and plowing all of the land surrounding the restaurant building. According to plaintiff, Frohm's testimony creates an ambiguity in the contract, and therefore, Frohm's interpretation of the lease should govern the lease.

When a contract is ambiguous, extrinsic evidence may be admitted to determine the parties' actual intent. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). "An ambiguity may either be patent or latent." *Id*. Extrinsic evidence is not admissible to identify a patent ambiguity because a patent ambiguity is apparent from the face of the document. *Id*. However, extrinsic evidence may be used to show a latent ambiguity in the contract because a latent ambiguity is an ambiguity that " 'arises from a collateral matter when the document's terms are applied or

executed.' " *Id*., quoting *Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005). "Because the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist." *Id*. (citation and quotation marks omitted). With respect to a latent ambiguity, this Court has stated the following:

> A latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings. To verify the existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the contract language at issue, under the circumstances of its formation, is susceptible to more than one interpretation. Then, if a latent ambiguity is found to exist, a court must examine the extrinsic evidence again to ascertain the meaning of the contract language at issue. [*Shay*, 487 Mich at 668 (citations, quotation marks, and footnotes omitted).]

A review of the lease reveals that it is plain and unambiguous with respect to the definition of premises, and defendant's corresponding obligations to maintain and plow certain areas in relation to the premises. Section f of the lease defines "premises" as "*the building and land* located at 2852 Pine Grove Avenue . . . and specifically identified . . . [in the Sketch] as "Proposed Lease." Thus, the first half of Section f explicitly states that the premises includes more than just the restaurant building; the premises includes the restaurant building and land. The second half of Section f explicitly refers to the area identified in the Sketch as "Proposed Lease," and that area encompasses the restaurant building, the drive-through area, multiple parking spots, and additional asphalt, and is surrounded by four solid-black lines. The plain language of Section f and reference to the Sketch clearly demonstrate that the premises was never just the restaurant building. The premises is the restaurant building and the surrounding land. Moreover, the fact that Section f defines premises as the building and land located *at 2852 Pine Grove Avenue* is significant because it establishes that the premises is the entire plot of land leased from defendant. Accordingly, the language of Section f clearly and unambiguously defines premises as the entire plot of land leased from defendant as identified in the Sketch as the "proposed lease," which includes the restaurant building, parking spaces, drive-through area, and additional asphalt.

Paragraph 8 of the lease states that it is the landlord's obligation to "plow snow on the drive area that is adjacent to the [p]remises and identified . . . [in the Sketch] by the . . . dotted lines . . . ." Again, the premises is clearly defined by Section f as the building and land located at 2852 Pine Grove Avenue, and the premises includes the restaurant building, drive-through, parking spaces, and additional asphalt. Therefore, a plain reading of Section 8 makes clear that defendant is only required to plow snow in the area *adjacent* to the restaurant building, drive-through, parking spaces, and additional asphalt.

The Sketch further illustrates the clear language in Paragraph 8 that defendant must plow snow on the drive area within the dotted lines. The dotted lines in the Sketch do not extend within the proposed-lease area, but instead stop at the border of the proposed-lease area. The proposed-lease area is drawn with solid-black lines, not dotted lines. Moreover, Paragraph 8 states that the area adjacent to the premises is identified by the dotted lines in the Sketch. Paragraph 8 thus draws

a clear distinction between the premises and the area adjacent to the premises. The area adjacent to the premises cannot, as a matter of logic, include the proposed-lease area. Accordingly, there is no tenable ambiguity in the language of Paragraph 8.

## III. CONCLUSION

Paragraph 8, Section f, and the Sketch clearly and unambiguously require defendant, as landlord, to plow snow in the area identified by the dotted lines, which is adjacent to the land and building located at 2852 Pine Grove Avenue. Frohm's testimony, that the Section f's definition of premises only refers to the restaurant building, directly contradicts the Sketch and plain language of the lease. Frohm's testimony does not establish an ambiguity in the contract by creating the necessity for interpretation of two or more possible meanings. Because there is no ambiguity in the lease, this Court's must construe the lease as written. *Trader*, 293 Mich App at 215. Therefore, the trial court did not clearly err when it concluded that the lease did not impose a duty on defendant to maintain and plow the entire area surrounding the restaurant. Judgment in favor of defendant was proper.

Affirmed.

/s/ James Robert Redford
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien