AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES v BANK ONE, NA

Docket No. 254847. Submitted June 8, 2005, at Detroit. Decided July 7, 2005, at 9:00 a.m.

The American Federation of State, County and Municipal Employees (AFSCME) and AFSCME Council 25 brought an action in the Genesee Circuit Court against Bank One, NA; Wayne McIntyre; and Jamie Estep. McIntyre and Estep were former officers of AFSCME Local 2259 and had withdrawn funds from the plaintiffs' bank account at Bank One and deposited them into a new account in the name of the Genesee County Deputy Sheriffs' Association. The plaintiffs alleged breach of contract, tortious interference with an advantageous business relationship or expectancy, and tortious interference with a contractual relationship. Following a bench trial, the court, Robert M. Ransom, J., entered a judgment of no cause of action. The plaintiffs appealed.

The Court of Appeals *held*:

1. The AFSCME constitution provides that it is a contract between AFSCME and its subordinate bodies, such as local unions. The union dues paid to the local union belonged to the local. Under the provisions of the AFSCME constitution, the local's constitution, and the AFSCME financial standards code, to which McIntyre and Estep were contractually bound, McIntyre and Estep had an obligation to return the funds to AFSCME when the local seceded from AFSCME. Their actions in transferring the money to a seceding or antagonistic labor organization exceeded the scope of their powers and those of the local union, and were thus void and could not be ratified later by the membership of the local or its former executive board.

2. The trial court erred by finding that the plaintiffs were equitably estopped from demanding the return of the money. The withdrawal of the money violated the AFSCME constitution. There is no evidence that the plaintiffs induced McIntyre and Estep, or the local's membership, to believe that they could spend the local's money without the restrictions imposed by that constitution. Moreover, this is a breach of contract case, not an equitable action. The plaintiffs need not show that McIntyre and Estep acted

with an intent to steal in order to prevail on their breach of contract claim. The plaintiffs are entitled to judgment in their favor, including an order requiring McIntyre and Estep to return the money to AFSCME.

3. The trial court did not err when it denied the plaintiffs' motion to amend their complaint to add conversion and statutory conversion claims and to add the deputy sheriffs' association as a party. While the plaintiffs could possibly have maintained a claim for statutory conversion against the association, which is an entity by which McIntyre does business under an assumed name, he would be prejudiced by the late addition of a claim for treble damages. The plaintiffs could have added the association as a party from the beginning. Because it appears the defendants acted in good faith, although misguidedly, justice does not require that the plaintiffs be permitted to add the late claim against the association.

Affirmed in part, reversed in part, and remanded for further proceedings.

CONTRACTS — LABOR UNIONS — CONSTITUTIONS — OFFICERS.

Actions by an officer of a local of a national labor union that violate the constitution of the national organization or the local, to the extent the officer is contractually bound by those provisions, exceed the scope of the officer's power and constitute breach of contract; subsequent ratification of the officer's actions by the local's membership or leadership does not cure the violation.

*Miller Cohen, P.L.C.* (by *Bruce A. Miller, Richard G. Mack, Jr.,* and *Ada A. Verloren*), for the plaintiffs.

*Kullen & Kassab, P.C.* (by *John A. Kullen* and *Jeff F. Klein*), for Bank One, NA.

*Law Office of Frank A. Guido* (by *Frank A. Guido* and *George J. Mertz*) for Wayne McIntyre and Jamie Estep.

Before: GAGE, P.J., and WHITBECK, C.J., and SAAD, JJ.

SAAD, J. Plaintiffs, the American Federation of State, County and Municipal Employees (AFSCME) and AFSCME Council 25, brought this action and alleged

claims of breach of contract, tortious interference with an advantageous business relationship or expectancy, and tortious interference with a contractual relationship. Plaintiffs filed their complaint after defendants Wayne McIntyre and Jamie Estep, as former officers of AFSCME Local 2259, withdrew funds from plaintiffs' bank account at defendant Bank One, NA, and deposited them into a new account in the name of the Genesee County Deputy Sheriffs' Association. Following a bench trial, the trial court dismissed plaintiffs' claims for no cause of action. Plaintiffs appeal, and we affirm in part, reverse in part, and remand this case to the trial court.

I. OBLIGATIONS UNDER AFSCME CONSTITUTION AND RULES

A. APPLICABLE LAW

Plaintiffs argue that the trial court erred by entering a judgment of no cause of action on their claims. A trial court's findings of fact "may not be set aside unless clearly erroneous." MCR 2.613(C). A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Webb v Smith (After Remand)*, 204 Mich App 564, 568; 516 NW2d 124 (1994). Questions of law are reviewed de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

"In interpreting a contract, [a court's] obligation is to determine the intent of the contracting parties." *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). "If the language of the contract is unambiguous, we construe and enforce the contract as written." *Id*. A " 'contract is ambiguous when its provisions are capable of conflict-

ing interpretations.' " *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003) (citation omitted). "[C]ourts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Id*. at 468.

### B. AFSCME CONSTITUTION AND RULES

Article IX, § 52 of the AFSCME constitution provides that the constitution "shall constitute a contract between [AFSCME] and each of its subordinate bodies individually." See also *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Industry v Local 334*, 452 US 615, 619-622; 101 S Ct 2546; 69 L Ed 2d 280 (1981) (an international union's constitution is generally considered to be a contract with its local unions); *Mayo v Great Lakes Greyhound Lines*, 333 Mich 205, 214; 52 NW2d 665 (1952) (members of a voluntary organization are bound by its constitution and bylaws); see also *In re General Teamsters, Warehousemen & Helpers Union, Local 890*, 265 F3d 869, 874 (CA 9, 2001).

Under article IX, § 1 of the AFSCME constitution, the charters of local unions are explicitly required to "conform to [AFSCME's] Constitution, laws, rules, and regulations . . . ." As members, a local's officers are subject to the membership oath contained in the AFSCME constitution, by which they "promise to abide by the Constitution of" AFSCME. Under article IX, § 51 of the AFSCME constitution, a local's elected officers are also required to "promise and pledge" to "perform faithfully and with honor the duties of the office . . . and . . . deliver . . . all books, papers and other property of this union . . . at the close of [an] official term." Similarly, under article VI, § 1(A) of the constitution for Local 2259, the local's president has the duty "to

administer the affairs of this local in accordance with this constitution and the constitution of the International Union." Article VI, § 4(C) and (H) of the local's constitution provides that it is the treasurer's duty to "be responsible for any and all monies, properties . . . of this local that are delivered to him," and "[t]o act as custodian of all property of the local union." Under article VI, § 7(B) of the local's constitution, the executive board has "the power to allocate funds not to exceed a total of four hundred dollars ($400.00) by a majority vote, in an emergency situation[,] without the approval of the membership . . . ."

The AFSCME financial standards code is one of the laws, rules, and regulations with which locals and a local's officers are required to comply. Under article I, § 1 of this code, all locals are "required to meet the standards established by and set forth in this Code . . . ." Under article II, § 1 of the code, "[n]o monies other than funds belonging to the affiliate may be placed into any affiliate bank or investment account." Under article II, § 3 of the code, "[u]nion officers and staff have a fiduciary responsibility to manage and invest union funds prudently, in accordance with the affiliate's constitution and for the exclusive benefit of the affiliate and its members." The preamble to article V of the financial standards code similarly provides: (1) that "[u]nion money can be spent only with proper authorization," and "[a]uthorization should be given only for expenditures that serve a legitimate union purpose"; (2) that "[i]t is the duty of all union officers . . . to exercise adequate monitoring of all authorizations to ensure that funds are spent only for legitimate union purposes"; and (3) that "[o]fficers and staff have a fiduciary responsibility to see that the union's assets are managed prudently, ensuring that

any and all expenditures are for the exclusive benefit of the affiliate and its members."

Most significantly, article IX, § 35 of the AFSCME constitution provides:

> *The funds or property of a subordinate body,* whether chartered or not, *shall not be divided among the members,* but shall remain intact for the use of such subordinate body for its legitimate purposes while such subordinate body exists. When any such subordinate body secedes or discontinues affiliation, *all monies,* books, . . . and other properties *shall be transmitted* to the International Secretary-Treasurer and assigned to the International Union. . . . *No property of a subordinate body and no property in the possession, custody or control of any such subordinate body or any of its officers or employees . . . shall be given, contributed, assigned, donated or result to, or be given to the control of, either directly or indirectly, any seceding, dual or antagonistic labor organization or group* or to any subordinate body which is in violation of the International Constitution, *but any such property shall remain in the custody or control of the subordinate body as indicated above, regardless of whether a majority of the membership have seceded or disaffiliated.* [Emphasis added.]

Under article IX, § 36 of the AFSCME constitution, if a local has "seceded or purported to secede," a local threatens to dissolve or secede, "dissipation or loss of the funds or assets of the subordinate body is threatened," or a local "is acting in violation of this Constitution," the local may be placed under administratorship. Under article IX, § 44 of the AFSCME constitution, the administrator has the right to suspend the local's officers, and "shall have the right, upon demand, to take possession of all the funds, properties, books and other assets" of the local.

### C. ANALYSIS

The AFSCME constitution is clear and unambiguous and not subject to judicial interpretation insofar as it

requires locals and their officers, including defendants McIntyre and Estep, to abide by its provisions, and those of AFSCME's rules and regulations, including the financial standards code. Further, article IX, § 35 of that constitution clearly and explicitly prohibits a local and its officers from doing precisely what those defendants did in this case: transferring money that belongs to the local, or is in the local's possession, to any seceding or antagonistic labor organization or group. We conclude that McIntyre and Estep acted in breach of article IX, § 35 of the AFSCME constitution.

Additionally, article IX, § 35 of that constitution imposes on a disbanding or seceding local the unambiguous obligation to return "all monies, books, . . . and other properties" to AFSCME.[1] Pursuant to his oath of office, McIntyre similarly promised to deliver to his successor in office "all books, papers and other property" in his possession at the close of his official term. Likewise, under article VI, § 4(C) and (H) of the local's constitution, Estep was "responsible for any and all monies, properties . . . of this local that are delivered to him," and had the duty "[t]o act as custodian of all property of the local union." By taking the local's money and refusing to return it, both defendants violated their obligations under these provisions.

As argued by plaintiffs, dues received by a union belong to the union. For example, in *In re Professional Air Traffic Controllers Org*, 233 US App DC 73, 74, 78 n 16; 724 F2d 205 (1984), the court addressed the

---

[1] Importantly, article IX, § 35 further provides that, if a disbanding or seceding body reorganizes with AFSCME within two years after the assets are transferred to the international secretary-treasurer, AFSCME will return the money and other assets to the reorganized body. This provision clearly contemplates that, after the assets are held "in trust" for two years and the body fails to return to AFSCME, the money and other assets will permanently remain with AFSCME.

question whether a strike benefit trust fund was part of the union's bankruptcy estate. It was undisputed that the trust was created out of dues deducted from union members' paychecks and that the essential purpose of the trust had failed. *Id.* at 74-76, 78. Thus, the contents of the trust would revert to its donor, and the appellate court's task was to determine the identity of that donor—the union members or the union itself. *Id.* at 76-79. Though the membership designated a percentage of their dues to go to the trust for a specific purpose, and could have dissolved the trust at any time, the court found that the trust was funded with dues, and, because dues are the property of the union, the union was the trust's donor. *Id.* at 77-79.

Similarly, in *Murray v Laborers Union Local No 324*, 55 F3d 1445, 1455 (CA 9, 1995), the court held that a member could not maintain an action for conversion where the union applied his prepaid dues payment toward arbitration costs rather than his dues. The court found that, because the union had both possession *and* title to the dues, it had not exercised ownership rights over property belonging to another. *Id.* Additionally, in *In re General Teamsters, supra* at 876, the court held that members do not have an equity interest in their local union because they cannot share in the local's profits or control its assets, and because, once dues are paid, they become the property of the local union. Moreover, as a matter of equity, dues collected pursuant to a collective bargaining agreement's check-off procedures belong to the union that negotiated the agreement. See *New York Shipbuilding Corp v Industrial Union of Marine & Shipbuilding Workers of America, Local No 1*, 15 NJ Super 229, 233; 83 A2d 237 (1951).

While the funds at issue here may have been generated by the 1999 voluntary assessment rather than the

local's ten percent share of the per capita tax, that is a distinction without a difference. The parties agree that, under the AFSCME constitution, art IX, §§ 5, 6, and 11, AFSCME and Council 25 are entitled to a percentage of the per capita tax, but not any part of the voluntary assessment. The local is rebated its ten percent share of the per capita tax, plus the entire amount of the voluntary assessment. Accordingly, the distinction between money generated by the per capita tax and money generated by a voluntary assessment is relevant in determining AFSCME's and Council 25's shares of the money deducted from the paychecks of the local union's members, and the amount of the local's rebate. Plaintiffs could not have kept the funds generated by the voluntary assessment in the first instance.

However, there is nothing in the AFSCME constitution, Local 2259's constitution, or the financial standards code that makes a distinction concerning the permissible disposition of a local's funds on the basis of the source of those funds. In particular, nothing in these documents would lead a reasonable person to believe that the many rules applicable to the disposition of a local's money do not apply to funds generated by means other than the local's share of the per capita tax— whether by a voluntary assessment, a donation, a fundraiser, a bequest, or other means. Instead, these rules are meant to prevent corruption and misuse of union funds, and all speak in general terms such as, for example, "all monies" and "all properties" (Local 2259 constitution, art VI, § 4(C); AFSCME constitution, art IX, § 35), "all the funds" (AFSCME constitution, art IX, § 44), the "funds" (AFSCME financial standards code, art II, § 1; AFSCME constitution, art IX, § 35), and "no property" (AFSCME constitution, art IX, § 35). McIntyre and Estep have not identified any language in these documents where a distinction is made concern-

ing the permissible disposition of a local's funds on the basis of the source of the funds, and we have found none. Indeed, the relevant portion of article IX, § 35 of the AFSCME constitution states broadly that "[n]o property of any subordinate body and no property in the possession, custody or control of any such subordinate body or any of its officers or employees" shall be given to a seceding or antagonistic labor organization, or group.

By arguing that they were seeking to protect the local's funds for the local's membership, McIntyre and Estep impliedly concede that the funds they withdrew belonged to the local. Moreover, article II, § 1 of the financial standards code clearly provides that "[n]o monies other than funds belonging to the affiliate may be" deposited in the local's bank account. Article IV, § 7 of that code provides that "[a]ny amounts received, whether in cash or check, that are the property of the affiliate, must be deposited *in full* in a bank account in the name of the affiliate." (Emphasis in original.) Thus, the financial standards code contemplates that all funds deposited in a local's bank account belong to the local. Further, article IX, § 2 of the financial standards code requires that the local's monthly financial report list not only income from "dues and/or per capita tax" and from "initiation and/or reinstatement fees," but also "[i]ncome from any other sources, identifying the source and the purpose of the payment." Thus, the financial standards code contemplates both that a local may receive income from sources other than "dues and/or per capita tax," and that any such income belongs to the local.

Similarly, as a matter of property law, there is a rebuttable presumption that funds deposited in a bank account belong to the owner of the account. See

*Muskegon Lumber & Fuel Co v Johnson*, 338 Mich 655, 661; 62 NW2d 619 (1954). There is no support for any claim that, while the local's ten percent share of the per capita tax belongs to the local, funds generated by the voluntary assessment belong to the local's members themselves. Rather, the evidence here indicated that the increase was approved so that *the local* could spend the money on matters that it could not afford with its ten percent share of the per capita tax. Article II, § 3 of the financial standards code imposes on McIntyre and Estep, as "[u]nion officers[,] . . . [the] fiduciary responsibility to manage and invest union funds prudently, in accordance with the affiliate's constitution and for the exclusive benefit of the affiliate and its members."

In the context of a dispute between factions belonging to the same religious group, our Supreme Court held, as a matter of property law, that a faction that seeks to leave the group " 'could not take with them, for their own purposes, or transfer to any other religious body, the property dedicated to and conveyed for the worship of God under the discipline of this religious association; nor could they prevent its use by those who chose to remain in the church, and who represent the regular church organization.' " *Davis v Scher*, 356 Mich 291, 299; 97 NW2d 137 (1959), quoting *Fuchs v Meisel*, 102 Mich 357, 373-374; 60 NW 773 (1894). In this case, while it is true that the voluntary assessment was intended for the local's use, article IX, § 35 of the AFSCME constitution unequivocally states that "[t]he funds or property of a subordinate body . . . shall not be divided among the members . . . ." Thus, while a local's funds are to be used for the benefit of the local and its members for a proper union purpose, all the funds received by a local union belong to the local itself, and are not to be divided among its members.

We conclude that AFSCME is entitled to recover the monies withdrawn by McIntyre and Estep in this case, not because the members of Local 2259 so intended, but because article IX, §§ 35, 36, and 44 of the AFSCME constitution so provide, and McIntyre and Estep are contractually bound by those terms. Additionally, by withdrawing the local's money, endorsing a check payable to themselves, and depositing the check into the bank account of a seceding or antagonistic labor organization, McIntyre and Estep clearly and unequivocally violated article IX, § 35 of the AFSCME constitution. Their actions exceeded the scope of their powers and those of the local union and, therefore, were "*ultra vires*, unlawful and void, and incapable of being made good by ratification or estoppel."[2] *Louisville, N A & C R Co v Louisville Trust Co*, 174 US 552, 567; 19 S Ct 817; 43 L Ed 1081 (1899). Therefore, the alleged belated ratifications of these defendants' actions by the local's deposed executive board and the local's membership were both ineffective because, under the AFSCME constitution, neither body had the power to approve a transaction that was clearly and unambiguously prohibited by article IX, § 35 of that constitution.

## II. EQUITABLE ESTOPPEL

We agree with plaintiffs that the trial court erred by finding that plaintiffs were equitably estopped from demanding the return of the money taken by McIntyre and Estep.[3]

---

[2] Conversely, where the power to do an act exists, but has not been properly exercised, the act is merely voidable, not void, and can be ratified. See *American La France & Foamite Industries, Inc v Village of Clifford*, 267 Mich 326, 333-334; 255 NW 596 (1934).

[3] The equitable estoppel theory was not raised by defendants, but was raised independently by the trial court. See *Conagra, Inc v Farmers State*

### A. APPLICABLE LAW

Equitable issues are reviewed de novo, but we review for clear error the court's findings of fact supporting its decision. *Webb, supra* at 568.

> "Equitable estoppel is . . . a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact. Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." [*Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 527; 644 NW2d 765 (2002), quoting *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999).]

### B. ANALYSIS

The trial court found that plaintiffs were equitably estopped from denying that the funds generated by the voluntary assessment belonged to the local for it to spend as it chose. The court further ruled that "the equities here dictate that those monies are the monies of the local membership," and added that McIntyre and Estep were "only acting as the leadership of this local, in an effort to protect and preserve what rightfully belonged to the local" and that "[t]hey had no intent to steal." The court concluded that McIntyre and Estep

---

*Bank*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999). Moreover, equitable estoppel is clearly not an independent cause of action, but is merely a defense to be applied only when a party justifiably relies and acts on the belief that misrepresented facts are true. *Westfield Cos v Grand Valley Health Plan*, 224 Mich App 385, 391; 568 NW2d 854 (1997). For the reasons set forth in this section, the trial court erred by applying the doctrine to prevent AFSCME from seeking the return of the money taken by McIntyre and Estep.

"committed no misappropriation or tortuous [sic] wrongdoing."

Although we do not disagree with the court's initial statement, it misses the point. While the local was free to use the funds generated by the voluntary assessment to purchase flowers, throw parties, or assist members in financial need—the stated purposes of the voluntary assessment—those matters can all be viewed as a benefit to the local membership and a proper union purpose. But those expenditures do not violate express provisions of the AFSCME constitution, while the actions of McIntyre and Estep in withdrawing the local's money and giving it to a seceding or antagonistic labor organization clearly violate article IX, § 35 of the AFSCME constitution. There is no evidence that plaintiffs induced McIntyre and Estep, or the local's membership, to believe that they were free to spend the local's money without the restrictions imposed by the AFSCME constitution.

Additionally, this is a breach of contract case, not an equitable action. Under the clear language of article IX, § 35 of the AFSCME constitution, the local's money could not be distributed to the membership, could not be turned over to a seceding or antagonistic labor organization or group, and had to be turned over to the local's administrator and assigned to AFSCME upon a local's demise. Because McIntyre and Estep acted in clear violation of the AFSCME constitution, the local's constitution, and the financial standards code, they were not acting on behalf of the local. Rather, they were acting on behalf of themselves and other dissident members to prevent plaintiffs from taking what those defendants misguidedly believed they were entitled to keep. Plaintiffs need not show that McIntyre and Estep acted with an intent to steal in order to prevail on their breach of contract claim.

Accordingly, the trial court erred by finding that plaintiffs were equitably estopped from demanding a return of the money taken by McIntyre and Estep. Thus, the trial court erred by entering a judgment of no cause of action on plaintiffs' breach of contract claim against McIntyre and Estep. Plaintiffs are entitled to judgment in their favor, including an order requiring McIntyre and Estep to return the money to AFSCME, as the local's administrator.

### III. MOTION TO AMEND

Plaintiffs further complain that the trial court erred when it denied their motion to amend their complaint to add claims for conversion and statutory conversion, and to add the Genesee County Deputy Sheriffs' Association as a party.[4] We disagree.[5]

Although plaintiffs possibly could have maintained a claim for statutory conversion against the association because the association is the entity by which McIntyre does business under an assumed name, he would be prejudiced by the late addition of a claim for treble damages for statutory conversion.[6] Additionally, plain-

---

[4] At the hearing of plaintiffs' motion to amend, the attorney for Bank One stated, without contradiction by plaintiffs' counsel, that he was taking no position concerning plaintiffs' motion because plaintiffs' counsel had assured him that the proposed amended complaint would not add any claims against the bank. In light of plaintiffs' silence, we conclude that plaintiffs are estopped from arguing now that they should have been allowed to amend their complaint to assert additional claims against the bank. See *Lakeside, supra* at 527.

[5] A trial court's decision on a motion for leave to amend will not be reversed absent an abuse of discretion resulting in injustice. *Phillips v Deihm*, 213 Mich App 389, 393; 541 NW2d 566 (1995).

[6] "In the civil context, conversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992). However, "[a]n action for

tiffs could have added the association as a party from the beginning. In the context of a representational dispute, where it appears that defendants acted in good faith—although misguidedly—we do not believe that justice requires that plaintiffs be permitted to add a late claim for statutory conversion and treble damages against the association. We therefore conclude that the trial court did not abuse its discretion in denying plaintiffs' motion to amend.

In light of our resolution of this case, we need not address plaintiffs' remaining claims.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

the conversion of bank account funds . . . can be maintained only if there was an obligation on the defendant's part to return or deliver the specific money entrusted to it." *Check Reporting Services, Inc v Michigan National Bank-Lansing*, 191 Mich App 614, 626; 478 NW2d 893 (1991). In this case, McIntyre and Estep had no obligation to return any specific cache of money. Rather, they had an obligation to return an amount of money equal to the amount of money withdrawn from the local's bank account. Thus, plaintiffs may not maintain an action for common-law conversion against McIntyre and Estep.

"Statutory conversion, by contrast, consists of knowingly 'buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property.' " *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111; 593 NW2d 595 (1999), quoting MCL 600.2919a. But statutory conversion is " 'not designed to provide a remedy against the individual who has actually stolen, embezzled, or converted the property.' " *Campbell v Sullins*, 257 Mich App 179, 191-192; 667 NW2d 887 (2003), quoting *Marshall Lasser, PC v George*, 252 Mich App 104, 112; 651 NW2d 158 (2002). Because McIntyre and Estep are the persons who took the local's money, plaintiffs may not assert claims for statutory conversion against them.