# STATE OF MICHIGAN

# COURT OF APPEALS

SONG YU and SANG CHUNG,

        Plaintiffs-Appellants,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellee.

UNPUBLISHED
April 11, 2017

No. 331570
Ingham Circuit Court
LC No. 14-001421-CK

Before: CAVANAGH, P.J., and SAWYER and SERVITTO, JJ.

SERVITTO, J. (*dissenting*).

I respectfully dissent.

This case presents a matter of insurance contract/policy interpretation; an area in which the law is very clear. An insurance policy must be read as a whole to determine and effectuate the parties' intent, *McKusick v Travelers Indemnity Co*, 246 Mich App 329, 332; 632 NW2d 525 (2001), and the terms of the contract are accorded their plain and ordinary meaning. *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275, 278 (2009). The policy must be enforced in accordance with its terms; therefore, if the terms of the contract are clear, we cannot read ambiguities into the policy. *McKusick v Travelers Indem Co*, 246 Mich App 329, 332; 632 NW2d 525 (2001). A contract is ambiguous when its words may be reasonably understood in different ways. *Raska v Farm Bureau Mut Ins Co of Michigan*, 412 Mich 355, 362; 314 NW2d 440 (1982). If a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation, it may not be said to be ambiguous. *Hellebuyck v Farm Bureau Gen Ins Co of Michigan*, 262 Mich App 250, 254; 685 NW2d 684 (2004).

In this case, the clear and unambiguous language of the policy precludes coverage. Defendant sent plaintiffs a notice of cancellation of their policy on December 16, 2013, advising that the policy was to be cancelled, effective January 18, 2014, because the dwelling "has been unoccupied for more than 60 days or is vacant." Consistent with this position, defendant issued a check to plaintiffs on January 1, 2014, refunding the premium for the policy, less that payable through the stated cancellation date of January 18, 2014. On February 3, 2014, defendants sent plaintiffs an acknowledgement that they had received a claim for water damage to the home that had occurred in December 22, 2013, and requested that plaintiffs provide a sworn statement for proof of loss. Plaintiffs signed a "sworn statement in proof of amount of loss" on April 2, 2014,

-1-

wherein they stated that they moved to Lansing in 2010 but still spent leisure time at the Forest Drive home. On June 20, 2014, defendant denied the claim because plaintiff did not reside in the dwelling at the time of the loss such that it was not a "residence premise" as required by the policy, because the home was vacant for 60 consecutive days, and because the home was unoccupied for 6 consecutive months.

The policy at issue defines "residence premises," in relevant part, as "the one family dwelling . . . where you reside . . . ." Definitions, sec. C. 20. The term "reside" is not defined in the policy, however, "[t]he mere fact that a term is not defined in a policy does not render that term ambiguous." *Vushaj v Farm Bureau Gen Ins Co of Michigan*, 284 Mich App 513, 514; 773 NW2d 758 (2009). Moreover, "reside" has a commonly understood meaning. "Reside" is defined in the *American Heritage Dictionary* as "to live in a place permanently or for an extended period."

The policy clearly contemplates that a policyholder will have "one family dwelling" in which it will live in permanently or for an extended period of time and that is home that is intended to qualify as the residence premises. Because plaintiffs clearly swore that they moved to Lansing in 2010, the Forest Drive home was not a residence premises at the time of the December 2013 loss and defendant could and did properly deny coverage for the December 2013 claim on that basis alone.

Unlike the majority, I would not find that equitable estoppel applies or would lead to a different result. The doctrine of equitable estoppel precludes a party from asserting or denying the existence of a particular fact. *AFSCME v Bank One*, 267 Mich App 281, 293; 705 NW2d 355 (2005). "Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *Id*. (citations omitted). In *Morales v Auto-Owners Ins Co*, 458 Mich 288, 296-297; 582 NW2d 776 (1998), our Supreme Court stated that with respect to insurance contracts, plaintiff must establish "(1) that the defendant's acts or representations induced plaintiff to believe that the policy was in effect at the time of the accident, (2) that the plaintiff justifiably relied on this belief, and (3) that plaintiff was prejudiced as a result of his belief that the policy was still in effect." I do not believe that the above occurred in this case.

Ms. Ricks, the Farm Bureau adjuster who investigated both of plaintiffs' water damage claims, testified that she spoke to Song Yu on February 8, 2013, and he told her that they were moving to Lansing and were going back and forth between the Forest Drive house and Lansing. Ms. Ricks further testified that Song Yu told her that they were doing some repairs to the home to prepare it to be placed on the market. She testified that she would be surprised to learn that he had been living in Lansing since 2010 because he told her he *was moving* and that during her inspection for the February 2013 water damage incident there were boxes of goods present that would be consistent with someone in the process of moving. There were also cabinets being painted and doors lying on the floor, consistent with Song Yu's statement that they were doing some repairs to get the home ready to be placed on the market. Ricks admits that she should have filed an underwriting report to advise Farm Bureau that the house was going to be placed

on the market so that Farm Bureau would know it may soon be vacant and could follow up to see if the home appeared empty.

While I do agree with the majority that this testimony reflects the adjuster's knowledge that plaintiffs were in the process of moving, I am not persuaded that the testimony requires a conclusion, as stated by the majority, that defendant understood that plaintiffs were no longer residing in the home. Plans and intentions fall through and fail to come to fruition in many, many cases. The testimony supports the adjuster's belief that plaintiffs were in the process of moving and intended to put the Forest Drive property up for sale, but that neither event had yet occurred. The adjuster testified that Song Yu had told her that plaintiffs were going back and forth between the homes. How often and what that meant, exactly, was not clear. The adjuster should undoubtedly have followed up to see when the home became vacant, but the mere fact that she saw what appeared to be an event in progress does not mean that the house was unoccupied or vacant at the time of the February 2013 water event or that it would be so within any specific amount of time.

In addition, while defendant did keep the insurance premium through the stated cancellation date of January 18, 2104, defendant issued its refund a check to plaintiffs on January 1, 2014 for a prorated (87.6%) portion of the $892 premium. It was not until the sworn proof of loss statement dated April 2, 2014, that plaintiffs unequivocally and undisputedly informed defendant that they moved to Lansing in 2010 and it was not until June 20, 2014, that defendant denied the claim. Plaintiffs initiated this lawsuit only six months later, arguably not giving defendant a reasonable opportunity to refund the remaining premium of $100.19.

Moreover, it is undisputed that plaintiffs had the homeowner's insurance policy in effect with defendant in 2006 when they first purchased, and again, undisputedly, resided in the Forest Drive home on a full time, year round basis. In the addendum to plaintiff's policy, under Section I. Conditions, it is stated that plaintiffs' duties after loss include the duty to set forth in a sworn statement of proof of loss "changes in title or occupancy of the property during the term of the policy." There is no indication that after the February 2013 water incident that plaintiffs advised defendants in a sworn statement of proof of loss that the occupancy of the Forest Drive home had changed from full time, year round, to vacation home.

In sum, plaintiffs were advised on December 16, 2013, that their policy was being cancelled because the dwelling "has been unoccupied for more than 60 days or is vacant." They did not know of water damage to their home (the second occurrence) until December 25, 2013. Plaintiffs were aware of defendant's position that the home was unoccupied or vacant when the December 2013 water event occurred. Defendant's payment of the February 2013 water damage claim did not induce plaintiffs into believing that they would nonetheless have coverage given the clear language of the policy. It appears that plaintiffs were not forthright with the adjuster and defendant in an attempt to avoid the clear language of the policy. This is supported by the testimony that plaintiffs merely advised the adjuster that they were in the process of moving to a new home in February 2013 and not that they had moved to the Lansing area in 2010. It is also supported by the testimony that plaintiffs first advised defendant that they did not reside at the Forest Drive home as their "residence premise" in April of 2014.

I would therefore affirm.


/s/ Deborah A. Servitto