*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANA LIGHT AXLE MANUFACTURING, LLC,

UNPUBLISHED
April 28, 2022

Plaintiff-Appellant,

v

No. 356985
Oakland Circuit Court
LC No. 2020-182495-CB

US MANUFACTURING, LLC, WYNNCHURCH
CAPITAL PARTNERS III, LP, and
WYNNCHURCH CAPITAL, LP,

Defendants-Appellees.

Before: RICK, P.J., and MURRAY and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals as of right the order granting partial summary disposition in favor of defendants under MCR 2.116(C)(7). On appeal, plaintiff argues that the trial court erred by granting summary disposition as to Count I, intentional breach of the representations and warranties under Article II of the Unit Purchase Agreement (UPA), and Count II, breach of contract, because they were outside the scope of the 18-month limitations period set forth in the UPA. Plaintiff also contends that summary disposition was improper because the relevant provisions of the UPA are ambiguous. We affirm.

## I. BACKGROUND

After lengthy negotiations, plaintiff bought an automobile parts manufacturing plant (Plant) from U.S. Manufacturing Corporation. Defendant, U.S. Manufacturing, LLC (USM), is the successor in interest of U.S. Manufacturing Corporation. On February 9, 2017, plaintiff, plaintiff's parent company Dana Incorporated, U.S. Manufacturing Corporation, and defendant Wynnchurch Capital Partners, III, LP (Wynnchurch), a limited guarantor for USM, executed the UPA. The closing date was March 1, 2017. In Article II of the UPA, USM made several representations and warranties to plaintiff relating to Plant operations before March of 2017, compliance with health and safety laws, and the conditions of Plant equipment. The UPA also established procedures for indemnification regarding the representations and warranties under

-1-

Article II.  However, § 8.5 of the UPA required that indemnification claims brought under §§ 8.1(a) and 8.2(a) be asserted within 18 months after the March 1, 2017 closing date.

Plaintiff filed a complaint, which was later amended, alleging intentional breach of the representations and warranties in Article II of the UPA as to USM (Count I), breach of the UPA as to Wynnchurch (Count II), and fraud as to Wynnchurch and Wynnchurch Capital, LP (Count III).  Defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(8), arguing, in part, that plaintiff's claims for Intentional Breach of the UPA were barred by Section 8.5, and that plaintiff failed to allege a claim for fraud.  In response, plaintiff argued that it adequately alleged a claim for fraud, and that its claims for Intentional Breach of the UPA were not barred because they were brought under Section 8.1(b), rather than Section 8.1(a).  The trial court disagreed, finding that "under the clear and unambiguous terms of the parties' agreement, any claim for breach of representations and warranties (intentional or otherwise)" was within the scope of Section 8.5 of the UPA.  The trial court granted summary disposition under MCR 2.116(C)(7) in favor of defendants with respect to Counts I and II.  However, the court denied defendants' motion with respect to Count III, and allowed plaintiff to amend the complaint.  After plaintiff amended its complaint a second time, the parties stipulated to dismiss the case.  This appeal followed.

## II.  STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo.  *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015).  In reviewing a trial court's ruling that a claim is barred by the applicable statute of limitations under MCR 2.116(C)(7)

> [t]his Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them.  If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact.  If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court.  However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Hutchinson v Ingham Co Health Dep't*, 328 Mich App 108, 123; 935 NW2d 612 (2019) (cleaned up).]

"Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).  "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Highfield Beach v Sanderson*, 331 Mich App 636, 654; 954 NW2d 231 (2020) (cleaned up).

## III.  DISCUSSION

Plaintiff argues that Counts I and II are outside the scope of the time limitation provision of the UPA.  Plaintiff asserts that the relevant counts were brought under Section 8.1(b) of the UPA rather than Sections 8.1(a) or 8.2(a).  Alternatively, plaintiff argues that the provisions of the

UPA are ambiguous. Therefore, plaintiff asserts that summary disposition was improper. We disagree.

In interpreting a contract, this Court's goal is to discern the intent of the parties. *Highfield Beach*, 331 Mich App at 654. "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Id.* (cleaned up). However, "[u]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written. If the language of a contract is ambiguous, testimony may be taken to explain the ambiguity." *Id.* (cleaned up). "A contract is ambiguous if it is equally susceptible to more than a single meaning." *Henry Ford Health Sys v Everest Nat'l Ins Co*, 326 Mich App 398, 403; 927 NW2d 717 (2018) (cleaned up). "Courts must give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *American Federation of State, Co & Muni Employees v Bank One*, 267 Mich App 281, 284; 705 NW2d 355 (2005) (*AFSCME*) (cleaned up). Additionally, "[c]ontracts must be construed as a whole, giving effect to all provisions." *Edmore v Crystal Automation Sys Inc,* 322 Mich App 244, 263; 911 NW2d 241 (2017).

In its first amended complaint, plaintiff asserted that USM intentionally made misrepresentations under Article II and that Wynnchurch had also made material misrepresentations, which amounted to an intentional breach of contract and fraud respectively.

Under Article II of the UPA, USM made several representations and warranties to plaintiff relating to Plant operations, compliance with health and safety laws, and the condition of Plant equipment. The UPA specified that the representations and warranties of USM were made "as of the date hereof and as of the Closing Date, each of which shall survive the consummation of the transactions contemplated hereby as provided in Section 8.5 (including the subclauses thereof)." Relatedly, the parties executed the UPA on February 9, 2017 and the Closing Date was March 1, 2017.

Section 8.5 of the UPA provided:

> The representations and warranties of each party contained in this Agreement shall survive the Closing for a period ending on the eighteen (18) month anniversary of the Closing Date, at which time such representations and warranties shall terminate and thereafter be of no force and effect; provided, however, that the Buyer Fundamental Representations and the Seller Fundamental Representations shall survive the Closing until the date that is three (3) months after the sixth anniversary of the Closing Date. Any claim for indemnity under Section 8.l(a) or Section 8.2(a) shall be asserted in writing within the foregoing applicable survival period. Subject to Section 8.l(b), all covenants and agreements contained in this Agreement that by their nature are required to be performed at, by or prior to the Closing shall survive the Closing in perpetuity or for such period as expressly set forth therein. Notwithstanding the foregoing, any representation or warranty with respect to which a claim is made in accordance [sic] this ARTICLE VIII by the Person seeking to be indemnified within the survival periods set forth in this Section 8.5 shall survive as to such claim until such claim has been finally resolved. Subject

to Section 8.l(b), claims may be brought with respect to breach of any covenant, agreement or obligation contained herein regardless of whether any time period contained in such covenant, agreement or obligation has passed.

Section 8.1(a) and (b) provides:

> **Indemnification of Buyer's Indemnified Persons.** Subject to the provisions of this ARTICLE VIII, Seller shall indemnify and hold harmless Buyer and its Affiliates . . . for, from and against, and shall reimburse Buyer's Indemnified Persons for, any and all direct or indirect losses, [l]iabilities, fines, costs and expenses . . . arising out of, resulting from, or based upon or in connection with:
>
> (a) Any breach of any representation or warranty of Seller set forth in ARTICLE II of this Agreement or in any certificate delivered hereunder (it being understood that such representations and warranties, excluding the representations and warranties contained in Sections 2.2, 2.8(a)(iv) and 2.9(a) shall be interpreted without giving effect to any limitations or qualifications as to materiality set forth therein);
>
> (b) (i) Any breach of any covenant, agreement or other obligation of Seller set forth in this Agreement that (A) is to be performed after the Closing, (B) is an Indemnifiable Pre-Closing Covenant, or (C) was Intentionally Breached by Seller prior to Closing, (ii) the Simon Matter or (iii) any pre-Closing breach or pre-Closing non-compliance by Seller or its Affiliates of or under the IFT Agreement[.]

Under the UPA, "Intentional Breach" means

> with respect to any breach of any representation, warranty, agreement or covenant, an action or omission taken or omitted to be taken that the breaching party intentionally takes (or intentionally fails to take) with the actual knowledge that the taking of, or failure to take, such act would cause a material breach of such representation, warranty, agreement or covenant.

Plaintiff acknowledges that the 18-month limitation period established by Section 8.5 applies to claims brought under Section 8.1(a). However, plaintiff argues that it brought the relevant claims under Section 8.1(b), rather than Section 8.1(a). Moreover, plaintiff contends that the indemnification procedures in Section 8.1(a) apply only to "ordinary breaches," while Section 8.1(b)(i)(C) applies to Intentional Breaches. We disagree.

Section 8.1(a) specifically provides for indemnification for, "[a]ny breach of any representation or warranty of Seller set forth in ARTICLE II of this Agreement." Plaintiff asserts that interpreting Section 8.1(a) to include Intentional Breaches is contrary to the parties' intent because the parties did not include "Intentional Breach" under Section 8.1(a), unlike in Section 8.1(b). Plaintiff also argues that reading of Section 8.1(a) requires the "unsupported inference" that the use of the word "breach" in Section 8.1(a) was synonymous with the contractually defined term, "Intentional Breach." Plaintiff's arguments are unpersuasive.

"In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Highfield Beach*, 331 Mich App at 654 (cleaned up). Section 8.1(a) covers *any* breach of Article II's representations and warranties. The word "any" is understood to mean "every," "each one of all," and is "unlimited in its scope." *Harrington v Inter-State Business Men's Accident Ass'n*, 210 Mich 327, 330; 178 NW 19 (1920). Thus, the inclusion of "any breach" under § 8.1(a) does not apply only to "ordinary breaches," as plaintiff contends, but instead applies to *all* breaches of the representations and warranties under Article II, including intentional ones. The contractually defined term, "Intentional Breach," is merely a subset of breaches, and the defined term does not render the meaning of "any breach of any representation or warranty of Seller" ambiguous. Plaintiff's reading of Section 8.1(a) would render the word "any" meaningless, and is contrary to the plain and ordinary language of that Section. See *AFSCME*, 267 Mich App at 284. This Court may not create ambiguity where none exists. *Highfield Beach*, 331 Mich App at 654. The plain and ordinary language of the UPA establishes that the parties intended for claims of Intentional Breaches of the representations and warranties in Article II be brought under Section 8.1(a). Accordingly, the trial court did not err in granting partial summary disposition to defendants.

The parties' intent for Section 8.1(a) to apply to claims of Intentional Breaches is also evidenced by other Sections of the UPA, such as Section 8.6, which specifies indemnification limitations. Section 8.6 of the UPA assumes plaintiff would bring a claim for an Intentional Breach of representation and warranty under Section 8.1(a), not 8.1(b). Specifically, Sections 8.6(a) and 8.6(b) both reference Section 8.1(a), and provide a carve out for Intentional Breaches. Thus, plaintiff's interpretation of Section 8.1(a) to exclude claims of Intentional Breaches would render the carve outs in Sections 8.6(a) and 8.6(b) meaningless.

Plaintiff also contends its claims can be brought under Section 8.1(b) because Section 8.1(b) applies to "[a]ny breach of any covenant, agreement or other obligation of Seller . . . that . . . was Intentionally Breached by Seller prior to Closing . . . ." Therefore, plaintiff argues that it properly brought its claim for Intentional Breach under Section 8.1(b) because "agreements or other obligations" include representations and warranties in Article II of the UPA. However, plaintiff's interpretation of the phrase "agreement or other obligation" to include representations and warranties of Article II contradicts the language in Section 8.1(a), as well as other parts of the UPA. Section 8.1(a) specifically states that it applies to *any* breach of the representations and warranties in Article II of the UPA, which includes intentional ones. In contrast, Section 8.1(b) explicitly mentions covenants, agreements, and other obligations, but omits the phrase, "representations and warranties."

Regarding plaintiff's Section 8.5 argument, the first two sentences establish a survival period for representations and warranties in Article II, and a limitation period for claims brought under Section 8.1(a) and 8.2(a). The third sentence establishes a different survival period for covenants and agreements, subject to Section 8.1(b). The fourth sentence again refers to representations and warranties to clarify the relationship between the survival period and the claims limitation period. The last sentence of Section 8.5 again references covenants, agreements, and obligations with respect to Section 8.1(b), and the relationship between those survival periods and claim limitation periods. Therefore, Section 8.5 consistently used the phrase "representations and warranties" to reference the representations and warranties in Article II. Thus, the term "other obligations" does not encompass the phrase "representations and warranties."

-5-

Section 8.5 identifies a limited class of representation and warranties, "Buyer Fundamental Representations" and "Seller Fundamental Representations," and provides a longer survival period for those specific representations. However, plaintiff does not assert any claim on the basis of "Seller Fundamental Representations such representations." Plaintiff's interpretation of Section 8.1(b)(i)(C), to include claims of Intentional Breach of the representations and warranties in Article II of the UPA, contradicts Section 8.5. Section 8.5 explicitly states: "The representations and warranties of each party contained in this Agreement shall survive the Closing for a period ending on the eighteen (18) month anniversary of the Closing Date, at which time such representations and warranties shall terminate and thereafter be of no force and effect." Section 8.5 then expressly provides an exception for Buyer and Seller Fundamental Representations, allowing claims related to those representations to, "survive the Closing until the date that is three (3) months after the sixth anniversary of the Closing Date." Under Section 8.5, representations and warranties in Article II are terminated after 18 months after the Closing Date, regardless of how they were breached; it does not make an exception for Intentional Breaches of representations and warranties.

Plaintiff argues that the first sentence in Section 8.5, relating to the termination of representations and warranties, does not limit when plaintiff may bring a claim for an intentional breach of those representation and warranties. However, read together, the first two sentences of Section 8.5 establish that claims for Intentional Breaches of representations and warranties in Article II of the UPA must be brought within 18 months after the Closing Date. Under Section 8.5, the reference to the termination of representations and warranties, and then the immediate reference to any claim of indemnity under Section 8.1(a) indicates that claims for breaches of representations and warranties must be brought under Section 8.1(a). This is further bolstered by the fact that Section 8.5 establishes a separate survival period for covenants and agreements, and then immediately references Section 8.1(b) with respect to covenants, agreements, and other obligations only. Accordingly, plaintiff's interpretation of Section 8.1(b)(i)(C) conflicts with Section 8.5.

Further, the absence of the phrase "representations and warranties" under Section 8.1(b)(i)(C) is telling, considering that the parties consistently used that phrase throughout the UPA to refer to the representations and warranties contained in Article II of the UPA. For example, in Section 6.1, which describe the conditions to closing, the UPA expressly separates USM's representations and warranties from its covenants, agreements, or other obligations. Specifically, in contrast to the "Seller Fundamental Representations," Section 6.1(a)(ii) states, "each of the other representations and warranties of Seller contained in <u>ARTICLE III</u> shall be true and correct in all respects." Section 6.1(b)(i) then states another, separate condition to closing: "All of the covenants and obligations that Seller is required to perform or to comply with pursuant to this Agreement . . . must have been duly performed . . . ." In addition, Section 2.32 expressly disclaims all other representations or warranties other than those set forth under Article II, providing:

> Except as expressly set forth in this Article II . . . , neither seller nor the company makes any representation or warranty, express or implied, at law or in equity, in respect of the company, its assets or the business . . . . All other representations or warranties are hereby disclaimed.

Because the UPA consistently refers to the representations and warranties in Article II as "representations and warranties," the parties presumably intended the term "representations and

warranties" to have a specific meaning. "[T]he use of different words connotes different meanings." *Rockford v 63rd Dist Court*, 286 Mich App 624, 627; 781 NW2d 145 (2009).

Plaintiff also argues Section 8.5 of the UPA supports its position because the last sentence refers to "other obligations" after previously using the phrase "representations and warranties." However, plaintiff's interpretation of the phrase "other obligations" to include "representations and warranties," would deprive the phrase "other obligations" of an independent meaning. Thus, plaintiff's interpretation is contrary to the plain language of the UPA and parties' intent.

Plaintiff also references Section 8.6(k) to support its argument that representations and warranties are encompassed in the phrase "other obligations." However, Section 8.6(k) also distinguishes representations and warranties from other obligations, providing, in pertinent part, " . . . [T]his section 8.6(k) shall apply to representations and warranties of seller but not any other covenants, or agreements or obligations of seller."

Therefore, plaintiff's reading of the UPA is contrary to the parties' intent and the language in other Sections of the UPA, and the trial court did not err in granting partial summary disposition to defendants.

Plaintiff also argues the parties' conflicting interpretations of the UPA render it ambiguous, thus, summary disposition was improper. "A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning." *Kendzierski v Macomb Co*, 503 Mich 296, 311; 931 NW2d 604 (2019) (cleaned up). Additionally, "if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." *Id*. (cleaned up). However, a finding of ambiguity is a last resort, and it should only be reached after "all other conventional means of interpretation have been applied and found wanting." *Id*. (cleaned up). While plaintiff argues that this Court should apply a different interpretation of Section 8.1(a), which is contrary to its plain and ordinary language, plaintiff does not specifically identify any ambiguous language in the UPA. Plaintiff merely asserts that, because the parties could interpret the contract in different ways, it is ambiguous. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). A party abandons an issue by failing to address the merits of his or her assertions. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008). Nonetheless, plaintiff's assertion ignores the fact that such an interpretation of the UPA would make Section 8.5 and Section 8.1(b) "irreconcilably conflict with each other." *Kendzierski*, 503 Mich at 311 (cleaned up). Further, this Court will not create ambiguity where none exists. *Highfield Beach*, 331 Mich App at 654. Plaintiff has failed to establish that the UPA contains ambiguous terms. Therefore, the trial court did not err when it granted partial summary disposition to defendants.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Douglas B. Shapiro