*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GEOFFREY YALE WEITZMAN,

        Plaintiff/Counterdefendant-Appellant,

v

MICHELE YVETTE WEITZMAN,

        Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
December 16, 2024
2:22 PM

Nos. 368183 and 369024
Oakland Circuit Court
LC No. 20-503247-DM

Before: RIORDAN, P.J., and BOONSTRA and YATES, JJ.

PER CURIAM.

In these consolidated appeals,[1] plaintiff/counterdefendant Geoffrey Yale Weitzman (plaintiff) appeals the trial court's order denying his motion to enforce a consent judgment of divorce against defendant/counterplaintiff Michelle Yvette Weitzman (defendant).[2] We affirm in part, vacate in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties were married on November 9, 2002. Before their marriage, defendant worked at Ameritech Cellular and Paging (Ameritech). During her employment with Ameritech, defendant contributed to a 401(k) plan (the 401(k)). It is not clear from the record when defendant opened the 401k. The parties dispute the value of the 401(k) at the time the parties married. Defendant claims that she made contributions to the plan "for years and years" before the marriage.

---

[1] See *Weitzman v Weitzman*, unpublished order of the Court of Appeals, entered May 13, 2024 (Docket No. 369024).

[2] Both dockets involve issues related to the trial court's order denying plaintiff's motion to enforce the consent judgment of divorce. In Docket No. 368183, plaintiff appeals by right the postjudgment denial of his request for attorney fees. In Docket No. 369024, we granted delayed leave to appeal, limited to the issue of the determination of the premarital portion of defendant's rollover IRA. See *Weitzman v Weitzman*, unpublished order of the Court of Appeals, entered May 13, 2024 (Docket No. 369024).

Plaintiff claims that defendant was struggling financially before their marriage and contributed very little, if anything, to the 401(k) during that time. When defendant's employment with Ameritech ceased in 2007, the funds in the 401(k) rolled over into defendant's existing individual retirement savings account (IRA).

During the marriage, plaintiff owned and operated a precious metals business, Synergy Metals, LLC. Synergy ceased regular operations in 2008, but continues to be registered with the state of Michigan. In 2013, the parties started an ink and toner business, Schleppink LLC, which was plaintiff's main source of income.

The trial court entered a consent judgment of divorce ("the consent judgment") on July 1, 2022. The consent judgment provided in relevant part: "Plaintiff shall be awarded 50% of the marital portion of [the IRA], as of the date of entry of Judgment, and the marital portion shall be divided 'in kind' and subject to all market fluctuations from date of entry of Judgment." The consent judgment also awarded defendant spousal support in the amount of $500 per month, for a period of six-and-a-half years. After the entry of the consent judgment, a receiver was appointed to sell and split Schleppink. However, after numerous attempts to sell the business, the receiver determined that the business was generating negative cash flow, had no prospective buyers, and needed to close.

On February 8, 2023, plaintiff moved to enforce the consent judgment, arguing in relevant part that defendant had refused to divide the entire IRA or provide documentation of the premarital portion of the IRA. Plaintiff also requested an award of attorney fees. Plaintiff claimed that after the closure of Schleppink he was unable to find new employment due to health concerns.

The trial court held an evidentiary hearing, during which plaintiff testified that defendant's 401(k) had "very little value" before the parties' marriage. Defendant presented expert testimony from Michael Bloom, a certified public accountant, concerning the value of the 401(k) at the time the parties were married. Bloom performed a historical analysis to estimate the premarital value of the 401(k), looking at the $98,674.04 value of the 401(k) as reflected on a statement from June 2006 (the oldest statement defendant was able to obtain), then working back 44 months using an estimated rate of return (based on S&P 500 historical data). Based on his calculations, Bloom estimated that there was $74,613.50 in the 401(k) at the end of October 2002. However, Bloom's calculations did not account for contributions. Bloom admitted that he did not know how much of the June 2006 value of the 401(k) was attributable to contributions made to the 401k between November 2002 and June 2006. Bloom had no documentation showing the amount that defendant contributed to her 401(k) after the parties were married.

The trial court denied plaintiff's motion to enforce the consent judgment. The trial court's order included a lengthy discussion on the issue of spousal support, finding that plaintiff had the ability to continue paying spousal support, had failed to prove his inability to work, and was living beyond his means. The trial court also found that the premarital portion of the IRA was $74,613.50 and that it should be awarded to defendant, with the parties equally splitting the remainder. The trial court's order also denied plaintiff's request for attorney fees. This appeal followed.

## II. STANDARD OF REVIEW

"Consent judgments of divorce are contracts and treated as such. We review de novo as a question of law the proper interpretation of a contract, including a trial court's determination whether contract language is ambiguous." *Andrusz v Andrusz*, 320 Mich App 445, 452; 904 NW2d 636 (2017) (citations omitted).

"This Court reviews a trial court's decision regarding whether to award attorney fees in a divorce action for an abuse of discretion. An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Colen v Colen*, 331 Mich App 295, 300; 952 NW2d 558 (2020) (quotation marks and citations omitted). "Findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error; questions of law are reviewed de novo." *Stallworth v Stallworth*, 275 Mich App 282, 288; 738 NW2d 264 (2007). "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Colen*, 331 Mich App at 300 (quotation marks and citation omitted).

## III. VALUATION OF THE PREMARITAL PORTION OF THE IRA

Plaintiff argues that the trial court erred in its determination of the value of the premarital portion of the IRA, based on Bloom's calculations. We agree.

"[A] consent judgment of divorce is a contract that must be interpreted according to the plain and ordinary meaning of its terms." *In re Lett Estate*, 314 Mich App 587, 600; 887 NW2d 807 (2016). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *City of Ferndale v Florence Cement Co*, 269 Mich App 452, 458; 712 NW2d 522 (2006). "This Court must examine the language of the contract and accord the words their ordinary and plain meanings, if such meanings are apparent." *In re Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007), aff'd 480 Mich 19 (2008) (citations omitted).

"A contract is ambiguous when its provisions are capable of conflicting interpretations." *AFSCME Int'l Union v Bank One*, 267 Mich App 281, 283-284; 705 NW2d 355 (2005) (quotation marks and citation omitted). "When contractual language is unambiguous, courts must interpret and enforce the language as written because an unambiguous contract reflects, as a matter of law, the parties' intent." *Harper Woods Retirees Ass'n v City of Harper Woods*, 312 Mich App 500, 508; 879 NW2d 897 (2015).

> Where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the intent of the parties in entering the contract. Thus, the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003) (citation omitted).

MRE 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. [MRE 702.]

"This rule requires the circuit court to ensure that each aspect of an expert witness's testimony, including the underlying data and methodology, is reliable." *Elher v Misra*, 499 Mich 11, 22; 878 NW2d 790 (2016) (footnote omitted).

In this case, the consent judgment stated: "Plaintiff shall be awarded 50% of the marital portion of [the IRA], as of the date of entry of Judgment, and the marital portion shall be divided 'in kind' and subject to all market fluctuations from date of entry of Judgment." The language of the consent judgment plainly requires the marital portion of the IRA to be divided equally between the parties; it does not, however, indicate the amount of the marital portion of the IRA or prescribe a methodology to calculate either the marital or premarital value. Neither party has set forth any evidence affirmatively or definitively showing the value of the 401(k), which would later roll over into the IRA, before the parties' marriage. The trial court's determination of the premarital value of the 401(k) was based solely on Bloom's opinion. We conclude that Bloom's valuation method was not a reliable method to calculate the premarital value.[3]

Bloom testified that he lacked any documentation of the premarital balance of the 401(k). Bloom only had a 401(k) account statement from June 2006, about four years after the parties' marriage. Defendant claimed that she had contributed to the 401(k) before her marriage and had continued to contribute to the 401(k) after the parties were married in 2002 until she left her job in 2007. Although defendant did not know the amount of those contributions, she claimed that her premarital contributions were substantial. Plaintiff testified that defendant's post-marital contributions were "maxing out the maximum" contribution allowable, although he also failed to provide a specific amount. In sum, the parties appear to generally agree that defendant made contributions to the 401(k) both before and after they were married, and that the 2006 balance used by Bloom included contributions made before and after the date of the marriage. But there was no evidence presented regarding the amount of any contributions to the 401(k), and Bloom admitted that his valuation method did not take into account any contributions made during the marriage. His resulting valuation method was therefore necessarily inaccurate. The 2006 statement only represents a snapshot of the account at one point in time, but does not contain sufficient information to accurately calculate the marital portion of the IRA. We conclude that Bloom's valuation did not use an accurate, reliable methodology. See *Elher*, 499 Mich at 22. We agree

---

[3] We note that plaintiff also has not offered any evidence as to the premarital value of the 401(k).

with plaintiff that the trial court erred by determining that the premarital value of the IRA was $74,613.50, based solely on Bloom's testimony.[4]

We disagree, however, with plaintiff's argument that the premarital and marital funds in the 401(k) were commingled such that the entire IRA should be considered marital property. "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). "The categorization of property as marital or separate, however, is not always easily achieved." *Id*. at 201. "[S]eparate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property." *Id*. (quotation marks and citation omitted).

In this case, the parties agree that funds contributed to the 401(k) during the marriage were marital property. See *id*. at 200. Plaintiff argues that defendant's contributions made to the 401(k) before the marriage should also be considered marital funds, because the premarital contributions were commingled with the marital funds. Specifically, plaintiff notes that the premarital 401(k) contributions were rolled over into the IRA and were then combined with additional funds into investment vehicles. Plaintiff also notes that money from his IRA and defendant's IRA were both used to pay household expenses.

In support of his argument, plaintiff cites *McNamara v Horner*, 249 Mich App 177, 184-185; 642 NW2d 385 (2002). In *McNamara*, this Court considered whether the premarital appreciation of the parties' retirement funds were included in the marital estate. We explained:

> The evidence indicated that these funds were commingled with funds each party contributed before marriage. Thus, the assets in these "premarital accounts" did not increase in value because of "wholly passive" appreciation, but instead by additional contributions, as well as appreciation. Thus, because of the parties' commingling of premarital and marital assets, it is not possible to accurately determine the premarital appreciation of these assets. [*Id*. at 184-184 (citations omitted).]

But *McNamara* involved an *increase in value* of premarital assets over the course of the marriage, not the principal amount of those assets. In fact, in *McNamara*, this Court stated: "[T]he principle [sic] amount contributed by each party to their respective retirement and TDA accounts, before their marriage, was properly removed from the marital estate as part of the stipulated premarital assets." *Id*. at 185 n 5. Therefore, even when there is commingling of assets after a

---

[4] Although the parties argue about whether Bloom breached the applicable standard of care for accountants, those arguments miss the mark. Bloom was very clear about the limitations of his valuation, which arose from the limited information he was provided by defendant concerning her 401(k). Bloom admitted that his valuation method did not account for contributions made during the marriage. The issue is therefore not so much whether Bloom's valuation method followed acceptable accounting practices, but whether that valuation could be used to calculate the premarital portion of the IRA. As stated, we conclude that it could not.

marriage, a party can still remove the premarital portion of assets before dividing the marital portion. We therefore decline to hold that the entire IRA is marital property. Nonetheless, we must reverse the trial court's denial of plaintiff's motion to enforce the consent judgment to the extent that the trial court adopted Bloom's valuation in determining the amount of the premarital portion of the IRA. On remand, although we do not prescribe a specific valuation method, and although the amount of the premarital portion need not be determined with mathematical precision, see *Woodington v Shokoohi*, 288 Mich App 352, 365; 792 NW2d 63 (2010), the trial court's valuation should determine the value of the 401(k) as of October 2002, without including later contributions made by defendant during the marriage.

## IV. ATTORNEY FEES

Plaintiff also argues that the trial court erred by failing to make factual findings regarding his request for attorney fees. We disagree.

"[A]ttorney fees are not recoverable as of right in divorce actions. Either by statute or court rule, attorney fees in a divorce action may be awarded only when a party needs financial assistance to prosecute or defend the suit." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005) (citations omitted). "A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding." MCR 3.206(D)(1).

> A party who requests attorney fees and expenses must allege facts sufficient to show that:
>
> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules. [MCR 3.206(D)(2).]
>
> Regarding a party's ability or inability to pay, this Court has stated:
>
> This basis for denying plaintiff attorney fees constituted an error of law. It was incumbent upon the trial court to consider whether attorney fees were necessary for plaintiff to defend her suit, including whether, under the circumstances, plaintiff would have to invade the same spousal support assets she is relying on to live in order to pay her attorney fees and whether, under the specific circumstances, defendant has the ability to pay or contribute to plaintiff's fees. Thus, on remand, the trial court must apply the correct legal analysis, giving special consideration to the specific financial situations of the parties and the equities involved. [*Myland v Myland*, 290 Mich App 691, 703; 804 NW2d 124 (2010).]

"[A] party sufficiently demonstrates an inability to pay attorney fees when that party's yearly income is less than the amount owed in attorney fees." *Id*. at 702.

In this case, plaintiff argues that an award of attorney fees was appropriate under MCR 3.206(D)(2)(a) because he is unable to pay his attorney fees and defendant is able to pay. Although the trial court made specific factual findings pertaining to the parties' financial situation in the context of spousal support, plaintiff argues that the trial court failed to make findings related to attorney fees. We disagree. The record shows that the trial court made thorough factual findings regarding the parties' respective financial situations, as they related to plaintiff's request for spousal support. Specifically, the trial court determined that plaintiff did not provide sufficient evidence showing his inability to work. The trial court noted that plaintiff did not provide medical documents showing that his health prevented him from working, and he failed to demonstrate that he could not rehabilitate Synergy. Therefore, even if plaintiff's unemployment hindered his financial status, the unemployment was voluntary, permitting the imputation of income. See *Moore v Moore*, 242 Mich App 652, 655; 619 NW2d 723 (2000) ("The voluntary reduction of income may be considered in determining the proper amount of alimony. If a court finds that a party has voluntarily reduced the party's income, the court may impute additional income in order to arrive at an appropriate alimony award.") (citations omitted).

The trial court also determined that plaintiff was living beyond his means. Plaintiff was living alone, but paying $2,000 a month to rent a four-bedroom house. The trial court also found that plaintiff's monthly inheritance payments were sufficient to cover his spousal support obligation and that he was no longer obligated to pay child support after his sons turned 18 years old and graduated from high school. The trial court also found that plaintiff's disability benefit would likely be sufficient to cover his spousal support obligation, although, at the time of the trial court's order, he had not yet been approved for Social Security disability benefits. Regarding defendant's financial situation, the trial court found that she earned $36,429.45 in 2022, but noted that her income fluctuates. The trial court also noted that defendant did not work during the majority of the parties' marriage, allowing plaintiff to grow his businesses while she stayed home and performed domestic labor. The trial court also found that, like plaintiff, defendant was currently living above her means.

The trial court's factual findings regarding spousal support were sufficient to justify the trial court's denial of attorney fees. The trial court was not obligated to repeat factual findings it had already made on the record. And on this record, we conclude that plaintiff has failed to meet his burden under MCR 3.206(D)(1) to "allege facts sufficient to show" that he is unable to pay attorney fees and that defendant is able to pay. Plaintiff argued before the trial court that he did not have the ability to pay attorney fees because he was unemployed and unable to work due to health struggles. However, as the trial court pointed out, plaintiff did not provide evidence showing that his health concerns had prevented him from working. Plaintiff has also failed to support his argument that defendant had the ability to pay his attorney fees. Plaintiff argues that defendant has employment and that her counsel of record was her brother. Plaintiff asserts that defendant receiving legal representation from a family member created an uneven playing field, but plaintiff did not show that defendant's brother was representing her at a reduced rate or pro bono. Further, even if defendant was receiving free or reduced cost legal representation from family, it does not necessarily follow that she has the ability to pay plaintiff's legal fees. The trial court did not err by denying plaintiff's request for an award of attorney fees under MCR 3.206(D)(1). *Colen*, 331 Mich App at 300.

## V. CONCLUSION

In Docket No. 368183, we affirm the September 25, 2023 order of the trial court to the extent it denies plaintiff's request for attorney fees. In Docket No. 369204, we vacate the portion of that same order determining the premarital portion of the IRA and awarding defendant $74,613.50 from that account as separate property. We leave undisturbed the remainder of the trial court's September 25, 2023 order. We remand for further proceedings consistent with this opinion; we do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Christopher P. Yates